TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00372-CV






Capital Metropolitan Transportation Authority, Appellant



v.



Pat Bartel, Appellee







FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY


NO. 233,266, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING







 Appellee Pat Bartel, a blind man, sued appellant Capital Metropolitan
Transportation Authority ("Capital Metro") and the City of Austin (the "City") for injuries he
received after he walked into a bus stop sign located in the middle of a sidewalk. The City settled
with Bartel before trial, and a jury found Capital Metro liable for failing to warn Bartel of an
unreasonably dangerous condition. The trial court rendered judgment on the jury's verdict and
awarded Bartel $40,159.95 in damages. Capital Metro raises three points of error, claiming that
the evidence is both factually and legally insufficient to support the verdict, and that Capital Metro
owed no duty to Bartel because the condition of the bus stop was not unreasonably dangerous as
a matter of law. We will affirm the trial-court judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 Pat Bartel is blind; he navigates by tapping with a cane in front of him, which
provides him a one-step warning of impediments. In April 1995, Bartel was walking on a
sidewalk in north Austin, returning from the store with two lightweight bags of groceries. Near
the intersection of Rutland Road and Park Village Drive, Bartel encountered a trash receptacle
positioned on the left edge of the sidewalk. He paused, stepped back, and proceeded around the
trash receptacle using his cane. However, he failed to detect a bus stop sign positioned in the
middle of the sidewalk, to the right of the trash can. When he collided with the sign, Bartel lost
his balance and fell off the right side of the curb into the road. The fall caused him to injure his
ankle, which required surgery to repair.

 Some time later, Bartel returned to the scene of his accident and took measurements
of the sidewalk, the bus stop sign, and the trash receptacle using a braille measuring stick. He
measured the sidewalk as being approximately six feet wide, the distance from the sign pole to the
edge of the curb as approximately twenty-seven inches, and the distance from the corner of the
trash receptacle to the sign pole as approximately twenty-six inches.

 Bartel brought suit against Capital Metro and the City of Austin, alleging negligence
in the design, construction, and maintenance of the sidewalk and bus stop. Capital Metro filed
a general denial and claimed sovereign immunity. The City settled with Bartel prior to trial for
$7,500, and Bartel proceeded to trial against Capital Metro.

 At trial, Bartel testified that after the accident, he telephoned Capital Metro to
complain about the placement of the bus stop sign and spoke with Jim Wright, an employee in the
Planning Department. After listening to Bartel's complaint, Wright said that he wanted to
personally inspect the bus stop. Bartel testified that Wright later called him back and told him: 
"It's a pretty stupid place for the sign to be and for the whole location of the bus stop area to be
set up like that. I can't imagine why it would have been done that way." Bartel further testified
that Wright also said that the bus stop violated Capital Metro's regulations, although he did not
specify which ones.

 Bartel's counsel also read into the record testimony from the depositions of Chris
Edmonds, a human resource generalist at Capital Metro, and Tim Cheatham, the Street and Bridge
Division manager for the City of Austin. Edmonds testified about Facilities Maintenance, a
department within Capital Metro that is responsible for creating and maintaining bus stops. He
also testified that the bus stop sign probably existed before the sidewalk was laid, and that the
sidewalk was then poured around the existing sign. After the sidewalk was poured, Capital Metro
placed the trash receptacle at the bus stop; it also installed a bench next to the sidewalk on a
separate concrete pad. In his deposition, Tim Cheatham testified that Capital Metro contracted
with the City to construct the sidewalk and had the right to comment on the construction of
sidewalks around existing bus stops.

 David Guzman, the supervisor of Facilities Maintenance, testified for Capital
Metro. On cross-examination, Guzman admitted that it would have been "safer" and "more
reasonable" for Capital Metro to place the trash receptacle off the sidewalk beside the bench
instead of in the middle of the sidewalk. Capital Metro also called Vivian Picow, an orientation
and mobility specialist, who gave her opinion that Bartel was injured because he was walking too
fast in an unfamiliar area. However, on cross examination Picow testified that an obstacle is a
hazard and a risk of harm, and that blocking physical access creates a risk to blind people. She
also testified that when there is an easier alternative, it is unreasonable to either partially block or
place obstacles in a sidewalk. After being shown a picture of the location where Bartel was
injured, Picow agreed that it was "not the best placement for a pole."

 Bartel also introduced in evidence two versions of "Bus Stop Placement Policies,
Guidelines and Procedures" used by Capital Metro, one dated 1991 and the other revised in 1996. 
The 1991 guidelines state: "Avoid placing bus stops where obstacles such as telephone or light
poles would block access." Under the "Site Selection, Criteria and Considerations" section, the
1996 guidelines provide: "Passage to and from buses cannot be blocked by a pole, hydrant, tree
or utility cables to ensure the safety of passengers." The 1996 guidelines also dictate that the
minimum clear width of an acceptable route is thirty-six inches.

 After a two-day trial, the jury returned a verdict for Bartel, finding damages of
$40,000. Appellant moved for judgment notwithstanding the verdict, which the trial court denied. 
After adding court costs and prejudgment interest and subtracting the City's $7,500 settlement,
the trial court rendered judgment in Bartel's favor for $40,159.95.

 Appellant raises three issues on appeal. First, Capital Metro argues that it owed
no duty to Bartel because the condition of the bus stop was not unreasonably dangerous as a matter
of law. In its second and third issues, appellant claims that Bartel failed to introduce legally and
factually sufficient evidence that Capital Metro had knowledge of an unreasonably dangerous
condition.

DISCUSSION

Capital Metro Owed a Duty to Bartel

 Whether a duty exists in a premises liability case is a question of law for the court
to decide. See Timberwalk Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex. 1998);
Lefmark Management Co. v. Old, 946 S.W.2d 52, 53 (Tex. 1997). The parties agree that in this
case, the premises liability standard is controlled by statute. Section 101.022(a) of the Civil
Practice and Remedies Code provides: "If a claim arises from a premise defect, the governmental
unit owes to the claimant only the duty that a private person owes to a licensee on private
property, unless the claimant pays for the use of the premises." Tex. Civ. Prac. & Rem. Code
Ann. § 101.022(a) (West 1997). A premises owner owes a licensee a duty to warn of or make
safe an unreasonably dangerous condition of which the premises owner is aware and the licensee
is not. See State Dept. of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992).

 In deciding whether to impose a duty, the court must balance several interrelated
factors. We must weigh the risk, foreseeability, and likelihood of injury against the social utility
of the actor's conduct, the magnitude of the burden of guarding against the injury, and the
consequences of placing the burden on the defendant. See Golden Spread Council, Inc. No. 562
of Boy Scouts of Am. v. Akins, 926 S.W.2d 287, 289-90 (Tex. 1996); Bird v. W.C.W., 868
S.W.2d 767, 769 (Tex. 1994). Foreseeability is usually the "foremost and dominant
consideration" of these factors. See El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1987). 
A condition presenting an unreasonable risk of harm is defined as one in which there is a sufficient
probability of a harmful event occurring that a reasonably prudent person would have foreseen it
or some similar event as likely to happen. See Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d
752, 754 (Tex. 1970). Because duty is a question of law, it would appear that foreseeability is a
question of law for purposes of determining the existence of a duty. See McIntosh v. NationsBank,
963 S.W.2d 545, 548 n.10 (Tex. App.--Houston [14th Dist.] 1997, pet. denied).

 Appellant argues that as a matter of law, the placement of a bus stop sign in the
middle of a sidewalk in close proximity to a trash receptacle does not constitute an unreasonably
dangerous condition. A reasonably prudent person, Capital Metro reasons, could not have
foreseen the general type of injury suffered by appellee. Bartel counters that the "obstacle course"
created by the bus stop layout is a foreseeable hazard to all sidewalk users, particularly the blind,
the elderly, the mobility-impaired, and people using bicycles, skateboards, roller skates, and baby
strollers. Appellee also points out that the twenty-six and twenty-seven inch clearance widths on
either side of the sign pole violate Capital Metro's own regulations, which call for a minimum
clearance of thirty-six inches. We agree that the possibility of injury created by the layout of the
bus stop was not so remote as to make the risk unforeseeable as a matter of law.

 Appellant cites several cases in support of its argument, none of which we find
persuasive on the facts of the present case. In Seideneck, the plaintiff fell and broke her arm in
the defendant's store when she caught her heel on a rug; the trial court granted the defendant's
motion for an instructed verdict. See Seideneck, 451 S.W.2d at 753. In affirming the take-nothing
judgment, the supreme court pointed out the lack of evidence that anyone had previously tripped
on the rug, and noted that there was not an allegation or any evidence that the rug was defective. 
See id. at 754. The court therefore held that there was no evidence that the condition and location
of the rug created an unreasonable risk of harm. See id.

 Similarly, in Wyatt v. Furr's Supermarkets, Inc., 908 S.W.2d 266 (Tex. App.--El
Paso 1995, writ denied), the plaintiff fell on the sidewalk outside the defendant's supermarket. 
Although she claimed to have slipped on gum, there was no evidence the gum was slippery or
sticky; all the testimony about the gum indicated that it was dried. The court of appeals affirmed
a summary judgment for the defendant, holding that the condition Wyatt complained of would not
have put a reasonably prudent person on notice that a dangerous condition existed on the sidewalk. 
See id. at 269.

 Seideneck and Wyatt are distinguishable from the instant case. Here, the six-foot
sidewalk was divided by obstructions creating narrow passageways on both sides of the sign pole: 
twenty-six inches on the left, and twenty-seven inches on the right. It is the condition of the bus
stop as a whole--the placement of the trash receptacle, the sign pole, and the curb in relation to
each other--that the jury found to be unreasonably dangerous. In contrast, there was nothing
alleged about the rug in Seideneck or the sidewalk in Wyatt that a jury could have found to
constitute an unreasonably dangerous condition. And although Bartel did not introduce evidence
of similar accidents occurring at the same bus stop, such evidence would be merely probative, not
conclusive, on the issue of foreseeability. See Seideneck, 451 S.W.2d at 754.

 Moreover, foreseeability is only one of several factors to consider in determining
the existence of a duty. We must also examine the likelihood of injury weighed against the social
utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the
consequences of placing the burden on the defendant. See Bird, 868 S.W.2d at 769; Wheaton Van
Lines, Inc. v. Mason, 925 S.W.2d 722, 729 (Tex. App.--Fort Worth 1996, writ denied). 
Appellant does not claim that there is any utility in placing bus stop signs in the middle of the
sidewalk. Testimony in the record indicates that Capital Metro has a department dedicated to the
construction and maintenance of bus stops; it would not cause great hardship to place the burden
on appellant to refrain from restricting clearance widths below their own minimum guidelines. 
Finally, although Capital Metro argues that similar bus stops exist throughout Austin, it introduced
no evidence to that effect. In contrast, Bartel testified that he has never encountered a bus stop
in Austin with this combination of obstacles. We overrule appellant's first issue.


Factual and Legal Sufficiency of the Evidence

 In its second issue, Capital Metro argues that Bartel failed to introduce legally
sufficient evidence that it had knowledge of an unreasonably dangerous condition. In its third
issue, appellant makes the same challenge based on factual insufficiency. We will address these
issues together.

 In reviewing a legal sufficiency challenge, we consider all the evidence in the light
most favorable to the prevailing party, indulging every reasonable inference in that party's favor. 
See Associated Indem. Corp. v. CAT Contracting, 964 S.W.2d 276, 285-86 (Tex. 1998). We will
uphold the finding if more than a scintilla of evidence supports it. See Burroughs Wellcome Co.
v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d
752, 755 (Tex. 1970); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). The evidence
supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the
finding given the facts proved in the particular case. See Crye, 907 S.W.2d at 499; Transportation
Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); see also William Powers, Jr. & Jack Ratliff,
Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515, 522 (1991). 
In reviewing a jury verdict to determine the factual sufficiency of the evidence, we consider and
weigh all the evidence and set aside the judgment only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. See Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986); King's Estate, 244 S.W.2d at 661; Simons v. City of Austin, 921 S.W.2d 524, 527
(Tex. App.--Austin 1996, writ denied); see generally Powers & Ratliff, 69 Tex. L. Rev. 515.

 Capital Metro argues that Bartel was required to prove not only that the condition
was unreasonably dangerous and that Capital Metro knew of its existence, but also that it knew
the condition was unreasonably dangerous. However, knowledge of the danger can be established
by circumstantial evidence. See Simons, 921 S.W.2d at 528 n.2. Moreover, the supreme court
has noted that if the defendant created the dangerous condition, knowledge of its existence can be
inferred. See County of Harris v. Eaton, 573 S.W.2d 177, 179-80 (Tex. 1978) ("The significant
difference between the situation in which the governmental unit itself created the condition and that
in which something or somebody else created it is that the government will have actual knowledge
of its existence if it created the condition.").

 Trial testimony showed that Capital Metro installed and maintained the trash
receptacle and the bus stop sign. Capital Metro funded and oversaw the pouring of the sidewalk;
it also placed the bus stop bench on a cement pad adjacent to the sidewalk. Sometime after
pouring the sidewalk and placing the trash receptacle and bench, Capital Metro changed the sign
on the sign pole. Capital Metro maintained the bus stop on a regular basis and emptied the trash
receptacle weekly. There was also evidence that Capital Metro bus drivers drove past the bus stop
every ten minutes.

 Capital Metro employee Chris Edmonds testified that "blocking access is something
that is a concern for Capital Metro" and agreed that "it's not a good idea to block sidewalks." 
David Guzman admitted that it would have been "safer" and "more reasonable" to place the trash
receptacle next to the bench. Capital Metro's expert, Vivian Picow, testified that if there is an
easier alternative, it is unreasonable to either partially block or place obstacles in the sidewalk. 
After being shown a picture of the bus stop, Picow agreed that it was "not the best placement for
a pole." Finally, although Capital Metro's regulations require thirty-six inches as the minimal
acceptable clearance, the greatest clearance on either side of the pole was twenty-seven inches.

 There is more than a mere scintilla of evidence that Capital Metro had knowledge
of an unreasonably dangerous condition. Nor can we say that the unanimous jury verdict in this
case is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
We overrule appellant's second and third issues.


CONCLUSION

 The type of injury caused by the layout of the bus stop was not unforeseeable as a
matter of law, and a weighing of the other relevant factors leads us to conclude that Capital Metro
owed a duty to Pat Bartel. The evidence that Capital Metro knew the bus stop constituted an
unreasonably dangerous condition is both legally and factually sufficient. We therefore affirm the
trial-court judgment.



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: April 1, 1999

Do Not Publish



ts it. See Burroughs Wellcome Co.
v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d
752, 755 (Tex. 1970); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). The evidence
supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the
finding given the facts proved in the particular case. See Crye, 907 S.W.2d at 499; Transportation
Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); see also William Powers, Jr. & Jack Ratliff,
Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515, 522 (1991). 
In reviewing a jury verdict to determine the factual sufficiency of the evidence, we consider and
weigh all the evidence and set aside the judgment only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. See Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986); King's Estate, 244 S.W.2d at 661; Simons v. City of Austin, 921 S.W.2d 524, 527
(Tex. App.--Austin 1996, writ denied); see generally Powers & Ratliff, 69 Tex. L. Rev. 515.

 Capital Metro argues that Bartel was required to prove not only that the condition
was unreasonably dangerous and that Capital Metro knew of its existence, but also that it knew
the condition was unreasonably dangerous. However, knowledge of the danger can be established
by circumstantial evidence. See Simons, 921 S.W.2d at 528 n.2. Moreover, the supreme court
has noted that if the defendant created the dangerous condition, knowledge of its existence can be
inferred. See County of Harris v. Eaton, 573 S.W.2d 177, 179-80 (Tex. 1978) ("The significant
difference between the situation in which the governmental unit itself created the condition and that
in which something or somebody else created it is that the government will have actual knowledge
of its existence if it created the condition.").

 Trial testimony showed that Capital Metro installed and maintained the trash
receptacle and the bus stop sign. Capital Metro funded and oversaw the pouring of the sidewalk;
it also placed the bus stop bench on a cement pad adjacent to the sidewalk. Sometime after
pouring the sidewalk and placing the trash receptacle and bench, Capital Metro changed the sign
on the sign pole. Capital Metro maintained the bus stop on a regular basis and emptied the trash
receptacle weekly. There was also evidence that Capital Metro bus drivers drove past the bus stop
every ten minutes.

 Capital Metro employee Chris Edmonds testified that "blocking access is something
that is a concern for Capital Metro" and agreed that "it's not a good idea to block sidewalks." 
David Guzman admitted that it would have been "safer" and "more reasonable" to place the trash
receptacle next to the bench. Capital Metro's expert, Vivian Picow, testified that if there is an
easier alternative, it is unreasonable to either partially block or place obstacles in the sidewalk. 
After being shown a picture of the bus stop, Picow agreed that it was "not the best placement for
a pole." Finally, although Capital Metro's regulations require thirty-six inches as the minimal
acceptable clearance, the greatest clearance on either side of the pole was twenty-seven inches.

 There is more than a mere scintilla of evidence that Capital Metro had knowledge
of an unreasonably dangerous condition. Nor can we say that the unanimous jury verdict in this
case is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
We overrule appellant's second and third issues.


CONCLUSION

 The type of injury caused by the layout of the bus stop was not unforeseeable as a
matter of law, and a weighing of the other relevant factors leads us to conclude that Capital Metro
owed a duty to Pat Bartel. The evidence that Capital Metro knew the bus stop constituted an
unreasonably dangerous condition is both legally and factually sufficient. We therefore affirm the
trial-court judgment.