COUNTY OF HARRIS, Texas,
Petitioner,

v.

James EATON et al., Respondents.

No. B–7450.

Supreme Court of Texas.

Oct. 11, 1978.

Rehearing Denied Dec. 6, 1978.

Joe Resweber, County Atty., J. R. Hobgood, Asst. County Atty., Houston, for petitioner.

Roland B. Darby and Larry W. Harrison, Houston, for respondents.

POPE, Justice.

This is a negligence case which requires our decision whether, under sections 14(12) and 18(b) of the Tort Claims Act, Tex.Rev. Civ.Stat.Ann. art. 6252–19, the defendant Harris County owed the plaintiffs the limited duty owing a licensee, as insisted by Harris County, or the duty of ordinary negligence as the courts below have held. James Eaton, Doris Jean Burk Eaton, John C. Hall and Nancy W. Hall sued Harris County for personal injuries. The trial was to the court, which rendered judgment for plaintiffs. The court apportioned seventy percent of the negligence to the defendant Harris County and thirty percent to plaintiff. The court of civil appeals affirmed. 561 S.W.2d 245. We affirm the judgments of the courts below.

The suit arose from an automobile accident. Doris Jean Burk Eaton shortly after noon on February 29, 1976, was driving her 1976 Mercury Capri along the Riceville School Road in Harris County. Her passengers included the other plaintiffs. The day was clear and Doris Jean was driving in a southerly direction at 35 miles per hour. Riceville School Road is a lightly traveled two-lane asphalt roadway in Harris County, not within any corporate city limits. There was no approaching traffic. Her automobile struck a large hole in the asphalt pavement causing the car to flip and turn upside down in the ditch beside the road. Witnesses described the hole as oval shaped, varying at places from six to ten inches in depth and extending over ninety percent of the width of the highway. The hole was four feet wide at some points and nine feet wide at others. Pictures of the hole show that its deepest part was astride the center stripe and that one could not stay on the pavement and miss it. An approaching driver could see the hole when two hundred feet away but could not tell its depth from that distance. A southbound driver would cross at least one other "chughole" before hitting the hole that caused the accident, but the many other holes on Riceville School Road that day were too small to pose a hazard. There were no signs, barricades or other devices warning that the large hole was dangerous. The upkeep of the road was a duty of the Road and Bridge Department of Harris County's third precinct.

The road department had paved the road with one inch of asphalt between August 25 and 29, 1975. Its employees reported they had also cleaned the drainage ditches, cut the roadside grass, and patched the road's chugholes during the period between February 9 and February 11, 1976. Despite the road department's reported repairs, holes were so prevalent on the roadway eighteen days afterward—the day of the accident— that the deputy sheriff who investigated the accident said that chugholes were "the rule of the day." Part of the job responsibility of the road department superintendents was to notice and report needed road repairs. They were instructed to report the condition of the adjoining road as they proceeded back and forth from jobs, as they did several times daily. They had not reported any needed repair on Riceville School Road.

Defendant Harris County construes article 18(b) of the Tort Claims Act to impose upon the County only the duty owing a licensee. That duty would excuse Harris County from a duty to warn a licensee or to make the premises safe when the licensor, Harris County, did not have actual knowledge of the dangerous condition according to *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561 (Tex.1976), and *State v. Tennison*, 509 S.W.2d 560 (Tex.1974). The plaintiffs, on the other hand, urged and the courts below have held that, as a matter of statutory construction, the limitation of the governmental unit's liability to that of a licensee does not apply in instances of "spe-

cial defects such as excavations or obstructions on highways." Plaintiffs urge that Harris County was negligent if it "should have known" of the dangerous condition since its duty was more than that of a mere licensor. These are the relevant parts of the Tort Claims Act, *supra*:

Liability of governmental units

Sec. 3. Each unit of government in the state shall be liable for money damages for . . . or death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state. . . .

\* \* \* \* \* \*

Exemptions

Sec. 14. The provisions of this Act shall not apply to:

\* \* \* \* \* \*

(12) Any claim arising from the absence, condition, or malfunction of any traffic or road sign, signal, or warning device unless such absence, condition, or malfunction shall not be corrected by the governmental unit responsible within a reasonable time after notice, or any claim arising from the removal or destruction of such signs, signals or devices by third parties except on failure of the unit of government to correct the same within such reasonable time, after actual notice. Nothing herein shall give rise to liability arising from the failure of any unit of government to initially place any of the above signs, signals, or devices when such failure is the result of discretionary actions of said governmental unit. The signs, signals and warning devices enumerated above are those used in connection with hazards normally connected with the use of the roadway, and *this section shall not apply to the duty to warn of special defects such as excavations or roadway obstructions.*

\* \* \* \* \* \*

Exclusions

Sec. 18. \* \* \*

(b) As to premise defects, *the unit of government shall owe to any claimant only the duty owed by private persons to a licensee* on private property, unless payment has been made by the claimant for the use of the premises. *Provided, however, that the limitation of duty contained in this subsection shall not apply to the duty to warn of special defects such as excavations or obstructions on highways,* roads or streets, nor shall it apply to any such duty to warn of the absence, condition or malfunction of traffic signs, signals or warning devices as is required in Section 14(12) hereof.

[Emphasis supplied.]

■ The statutes provide an understanding of the kinds of dangerous conditions against which the legislature intended to protect the public. They are expressed as such things "as excavations or roadway obstructions." Under the ejusdem generis rule, we are to construe "special defect" to include those defects of the same kind or class as the ones expressly mentioned. *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269 (1944); *Farmers' & Mechanics' National Bank v. Hanks,* 104 Tex. 320, 137 S.W. 1120 (1911). The two examples that are included in the statute are not exclusive and do not exhaust the class. One characteristic of the class that should be considered is the size of the dangerous condition. The hole in the highway in this instance had reached the proportions of a ditch across the highway.

■ The County urges that the ditch also had to be "specially created" by the governmental unit. It is our view that an excavation or obstruction need not have been created by the governmental unit itself. Nothing in the statute expresses that idea. For example, an avalanche which clogs a mountain road would be an obstruction although the governmental unit did not create it. The same may be said of an excavation. Whether created by the governmental unit, by natural forces or by third persons, the dangerous condition on the roadway is the same. The significant difference between the situation in which

the governmental unit itself created the condition and that in which something or somebody else created it is that the government will have actual knowledge of its existence if it created the condition. The governmental unit that has actual knowledge of its creation already has a duty even to a licensee. *Lower Neches Valley Authority v. Murphy, supra,* at 563. The proviso of section 18(b) was meant to enlarge the liability in some instances by imposing the duty to warn when there was a special defect. Accordingly, we hold that the abnormally large hole was a special defect and the County had the duty to warn as in the case of the duty one owes to an invitee.

■ Harris County argues alternatively that there is no evidence that the road department "should have known" about the road condition. Since the road crews had been on the road at least as recently as two weeks before the accident, the County primarily argues that there is no evidence the defect had existed long enough for discovery. The investigating officer's testimony about the large depth and wear of the large hole in relation to the other non-hazardous holes on the road is some evidence that the hole had existed for a long time. Plaintiff James Eaton testified that the hole "looked like it had been there for a considerable amount of time." We regard Eaton as testifying to a composite fact, a summary of all the small marks and indications of wear that would indicate age. *Cf. Pinchback v. Pinchback,* 352 S.W.2d 151 (Tex.Civ.App.—Waco 1961, writ ref'd n. r. e.); *Maxwell v. Maxwell,* 204 S.W.2d 32 (Tex.Civ.App.—Amarillo 1947, writ ref'd n. r. e.). Also, in the context of this record, plaintiff's pictures of the hole in question offer some evidence it had existed for several weeks. There is evidence the County should have known about the condition.

The judgments of the trial court and court of civil appeals are affirmed.

Dissenting opinion by STEAKLEY, J., in which GREENHILL, C. J., and BARROW and CHADICK, JJ., join.

STEAKLEY, Justice, dissenting.

Under established precedents—*Lower Neches Valley Authority v. Murphy,* 536 S.W.2d 561 (Tex.1976), and *State v. Tennison,* 509 S.W.2d 560 (Tex.1974)—the County is not liable here unless it was under the duty to warn Eaton, et al., of the hole in the pavement. It was under this duty only if the condition of the payment was a "special defect" such as an "excavation" or "obstruction." Section 18(b) of the Tort Claims Act reads:

Sec. 18.

(b) As to premise defects, the unit of government shall owe to any claimant only the duty owed by private persons to a licensee on private property, unless payment has been made by the claimant for the use of the premises. Provided, however, that *the limitation of duty contained in this subsection shall not apply to the duty to warn of special defects such as excavations or obstructions* on highways, roads or streets, nor shall it apply to any such duty to warn of the absence, condition or malfunction of traffic signs, signals or warning devices as is required in Section 14(12) hereof. *(Italics are added).*

The majority applied the *ejusdem generis* rule of construction to the end result, i. e., to a hole in the street, no matter how it came to pass. This, I think, is misplaced. I agree with the recognition by the United States Supreme Court that this rule—that where particular words of description are followed by general terms the latter will be regarded as applicable only to persons or things of a like class—is far from being of universal application, and never is applied when to do so will give to a statute an operation different from that intended by the body enacting it. Its proper office is to give effect to the true intention of that body, not to defeat it. *Danciger v. Cooley,* 248 U.S. 319, 39 S.Ct. 119, 63 L.Ed. 266 (1919). Of controlling significance is the causative factor implicit in the words "excavation" and "obstruction" used by the Legislature in Section 18(b). Each of these words carries the idea of an overt act, of

something having been done by the unit of government of which it would have immediate knowledge and for which it should have to answer. More appropriate, then, is the doctrine of construction, *noscitur a sociis,* which teaches that the meaning of particular terms in a statute may be ascertained by reference to words associated with them in the statute; and that where two or more words of analogous meaning are employed together in a statute, they are understood to be used in their cognate sense, to express the same relations and give color and expression to each other. An excavation is defined as a cavity formed by cutting, digging, or scooping. Obstruction is defined as a thing that obstructs or impedes; an obstacle, impediment, or hindrance, as in a street, river, or design. Webster's New International Dictionary of the English Language (2d Ed.) (1961), at 888, 1682.

The Supreme Court of Pennsylvania has written that "To excavate means to make a hole or cavity in, hollow out, scoop, dig or cut a hollow in . . . ." *Rochez Bros. v. Duricka,* 374 Pa. 262, 97 A.2d 825 (1953). It has been held that an exposed face of a stone quarry was not an "excavation" within the terms of a statute requiring the erection of good and substantial fences or other safeguards sufficient to prevent persons and animals from falling into shafts or excavations. *McDermott v. Kaczmarek,* 2 Wash.App. 643, 469 P.2d 191 (1970). See also *Orr Ditch & Water Co. v. Justice Court of Reno,* 64 Nev. 138, 178 P.2d 558 (1947).

It is even more strained to say that a wear and tear hole in a street is an "obstruction" within the terms of this statute. An obstruction is a hindrance, obstacle, or barrier. *Carder v. City of Clarksburg,* 100 W.Va. 605, 131 S.E. 349 (1926).

There is no claim or evidence that the County excavated, i. e., made or dug or otherwise created the hole or that any type of barrier or hindrance had been erected by the County. Indeed, the majority in its recitation of the facts recognizes that the hole resulted from pavement age and wear. We know that holes in pavements resulting from normal wear and tear are commonplace. They are of all sizes and may increase in size and depth from day to day. I know no way of determining when a wear and tear hole, which most usually has a small beginning, becomes an "excavation" or an "obstruction." I know no way of determining how big or how long standing it must be to qualify as such. In my view, an extension of the coverage of the Tort Claims Act to this commonplace condition goes far beyond the terms of Section 18(b).

I therefore dissent in the conviction that this far-reaching expansion of the liability of governmental units is without warrant either in the actual words of the statute or in the legislative intent evinced by these words. My views are in accord with the action of this Court in letting stand the ruling in *Sutton v. State Highway Department,* 549 S.W.2d 59 (Tex.Civ.App.1977, writ ref'd, n. r. e.).

Dissent joined by GREENHILL, C. J., and BARROW and CHADICK, JJ.