STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION of the State of Texas, Appellant,

v.

Walter James CARSON et al., Appellees.

No. 6867.

Court of Civil Appeals of Texas, El Paso.

April 16, 1980.

Rehearing Denied June 18, 1980.

Mark White, Atty. Gen., John W. Fainter, Jr., First Asst. Atty. Gen., Ted L. Hartley, Executive, Watson C. Arnold, Dudley Fowler, Stephen Greenberg, Asst. Attys. Gen., Austin, for appellant.

Branton & Mendelsohn, Inc., James L. Branton, Chrysanthe A. Lambros, San Antonio, Vernon N. Reaser, Jr., Victoria, for appellees.

## OPINION

WARD, Justice.

This is a negligence case arising from an automobile accident. It presents the question whether defective pavement markings at a detour are special defects within the exceptions created by Sections 14(12) and 18(b) of the Texas Tort Claims Act, Art. 6252–19, Tex.Rev.Civ.Stat.Ann. (1970). The trial Court held the markings to be special defects and that the State owed the Plaintiffs the duty of ordinary care. Trial was before a jury and, based on the special issues submitted, judgment was entered against the State. We hold that the markings are not a special defect, and reverse and render the judgment.

At 6:30 p. m. on June 19, 1975, Jesse Goodman was driving in a westerly direction in a road construction zone on U. S. Highway 87 in Bexar County. He was traveling at a high rate of speed in the right hand lane of the old highway when he approached a temporary paved detour that jogged to his right. His car failed to make the jog, crossed over the detour's new center yellow stripe and into an on-coming eastbound car being driven by Mrs. Rose Carson. As a result of the accident, Mrs. Carson and two of her passenger daughters were killed, while two other passenger daughters were severely injured. Mr. Goodman was also killed.

Mrs. Carson's husband, Walter Carson, filed this suit in various capacities for himself and as a representative of his deceased and injured family. Joined with him as Plaintiff was his adult son, Walter Carson, Jr., who sued on his own behalf and as heir and beneficiary of the estate of his deceased mother and two sisters. The original defendants were the Estate of Jesse Goodman and House-Braswell Equipment Company, Inc., the contracting firm which constructed the highway where the accident occurred. Defendant Audrey Goodman, individually and as the widow of Jesse Goodman and as next friend of the four surviving children of Jesse Goodman, filed cross-actions against both the Plaintiffs Carson and the Defendant House-Braswell. Thereafter, House-Braswell filed third party complaints against Audrey Goodman and against the State Department of Highways and Public Transportation for indemnity and contribution. Plaintiffs Carson then joined the Appellant, State Department of Highways and Public Transportation, as a Defendant in the suit. At the time of trial, the Carsons and House-Braswell entered into a "Mary Carter" agreement, and later the Goodmans non-suited their cause of action against both House-Braswell and the

Estate of Rose Carson. Thereafter, the parties were theoretically aligned as the Carsons and House-Braswell, by virtue of the "Mary Carter" agreement, suing both the Goodmans and the State of Texas, with the Goodmans having cross-claimed against the State.

By its answers to the special issues, the jury found (1) that the State was guilty of negligence which was a proximate cause of the collision; (2) that House-Braswell was not guilty of negligence; (3) that Jesse Goodman, deceased, was guilty of negligence which was a proximate cause of the collision; (4) that Rose Carson was not guilty of negligence; (5) that the percentage of negligence attributable to the State and to Jesse Goodman was 50% respectively; (7–12) that damages to the Carsons were some $410,000.00; (14–15) and damages to the Goodmans were almost $450,-000.00. After adjustments were made for the contributory negligence findings and for the State's limits of liability, judgment was entered for the Carsons and for the Goodmans, and the State appeals.

The design for the detour and all plans and specifications, including those for all warning signs and barricades, were supplied by the State to its independent contractor, House-Braswell. Under the terms of its contract with House-Braswell, the State was responsible for all striping at the detour. The Appellees' evidence showed that, at the time of the accident where the road jogged to the right into the newly surfaced detour, the old shoulder markings and stripes of the old highway, which was then being used as a part of the detour, were visible, and that Goodman, who was going west and in the face of the setting sun, was misled into continuing in a straight westerly direction across the center stripe and into the path of the on-coming Carson automobile. A series of the Appellant's points are to the effect that these acts and omissions amounted to regular premise defects and the only duty imposed on the State was that which a licensor would owe to its licensee on private property. The nature of the duty owed to a licensee by a unit of government was defined in *State v. Tennison*, 509 S.W.2d 560 (Tex.1974):

It is well settled in this State that if the person injured was on the premises as a licensee, the duty that the proprietor or licensor owed him was not to injure him by willful, wanton or gross negligence. [Authorities omitted.] An exception to the general rule is that when the licensor has knowledge of a dangerous condition, and the licensee does not, a duty is owed on the part of the licensor to either warn the licensee or to make the condition reasonably safe. [Authorities omitted.]

In this case, there was neither pleading, proof nor findings that would justify a judgment against the State if the State was a licensor. Instead, the Appellees by their pleadings, proof and findings advanced their theory that the defective and insufficient markings constituted a special defect without attempting to recover under the more difficult burden required of an injured licensee.

We are of the opinion that the conditions on the highway complained of are not special defects. Here, the old striping that was on the old highway had been completely covered by the placing of a seal coat all the way across the width of the highway; the detour had then been properly marked, and the defects which the Appellees relied upon only came about after the road surface of the detour had been worn by traffic for three months. In *County of Harris v. Eaton*, 573 S.W.2d 177 (Tex.1978), the Supreme Court held that a large pothole, almost as wide as the street, was a ⌐pecial defect and in construing the statute said:

The statutes provide an understanding of the kinds of dangerous conditions against which the legislature intended to protect the public. They are expressed as such things as 'excavations or roadway obstructions.' Under the ejusdem generis rule, we are to construe 'special defect' to include those defects of the same kind or class as the ones expressly mentioned. [Citing authorities.] The two examples that are included in the statute are not

exclusive and do not exhaust the class. One characteristic of the class that should be considered is the size of the dangerous condition. The hole in the highway in this instance had reached the proportions of a ditch across the highway.

The majority opinion further suggested that an avalanche which clogs a mountain road would be a roadway obstruction and thus a special defect.

Following this rule, this Court in *Miranda v. State*, 591 S.W.2d 568 (1979, no writ), held that some two feet of flood waters at a low water crossing on a highway was an obstruction and a special defect. It has also been suggested that falling trees or stalled cars could be considered as special defects. See 31 Baylor L.Rev. 517 at 525 (1979).

It follows that the existence of the markings or stripes, or the failure to obliterate all of the old stripes and markings complained about in the present case, cannot be made into an excavation or roadway obstruction under either the ejusdem generis rule of the majority in the *Eaton* case or under the various arguments made by the minority in that case. The State has retained its limited immunity in this case, and the Appellees' pleadings, proof and findings fail to establish any liability against the State. We sustain the Appellant's points 2, 4, 5, 6, 7, 8, 14, 15, 20, 28, and 30.

■ We will write on one other matter. The Carson Appellees entered into a "Mary Carter" agreement with House-Braswell by the terms of which House-Braswell agreed to settle with Carson for the sum of $50,-000.00. The agreement further provided that all damages recovered by Carson from the State of Texas over and above $65,-000.00 were to be shared equally with House-Braswell until such time as House-Braswell was indemnified to the extent of $50,000.00.

The State made known to the trial Court that it desired to make the existence of this agreement known to the jury. No objection was made, and, following a hearing outside the presence of the jury regarding disclosure of the "Mary Carter" agreement, the trial Court granted the State the right to bring the contents of the "Mary Carter" agreement before the jury. This was in line with the holding of *General Motors Corporation v. Simmons*, 558 S.W.2d 855 (Tex.1977). However, the trial Court further concluded that in the event the State did disclose the agreement, the Plaintiffs Carson and the Defendant House-Braswell were to have the opportunity of explaining to the jury their reasons for settlement. After the latter ruling was made, the State never exercised its option to bring the "Mary Carter" agreement to the attention of the jury, and the State now complains on appeal that it was effectively denied its right to disclose the "Mary Carter" agreement by virtue of the Court's assurance that the Carsons and House-Braswell would have an opportunity to explain the reasons for its existence.

The right of a settling defendant or plaintiff to explain a "Mary Carter" agreement, once such an agreement has been introduced before the jury, is a question that has not previously been addressed by the Texas courts. In this case, we do not reach the question. The State never exercised its option of bringing the "Mary Carter" agreement to the attention of the jury or of introducing it into evidence. Further, the State never took a bill of exceptions as to what was objectionable in the statements if they had been made to the jury by the Carsons or by House-Braswell. The State is asserting a highly speculative complaint. In the absence of a bill of exceptions showing what the parties would have said about their reasons for entering into the agreement, we have no way of knowing that the Appellant would have suffered harm from such testimony. No reversible error is presented. *Buhidar v. Abernathy*, 541 S.W.2d 648 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.); *Muller v. Reeher*, 520 S.W.2d 599 (Tex.Civ.App.—Fort Worth 1975, no writ). The point is overruled.

We have examined the balance of the points urged by the State on this appeal and the points are overruled.

The judgment of the trial Court is reversed, and judgment is rendered that the Appellees take nothing.