Office of the Attorney General · State of Texas

May 11, 2001

Mr. Jim Nelson
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. JC-0378

Re: Application of nepotism and conflict of interest statutes to the governing boards of open-enrollment charter schools (RQ-0331-JC)

Dear Mr. Nelson:

You ask whether members of the governing boards of open-enrollment charter schools and of nonprofit corporations that establish such schools are subject to Government Code chapter 573 and Local Government Code chapter 171, provisions that relate respectively to nepotism and local public officers' conflicts of interest. *See* TEX. GOV'T CODE ANN. §§ 573.001-.084 (Vernon 1994 & Supp. 2001); TEX. LOC. GOV'T CODE ANN. §§ 171.001-.009 (Vernon 1999). Members of the governing board of a nonprofit corporation that establishes an open-enrollment charter school and the governing board of the school, if there is one, are not subject to chapter 573 of the Government Code or chapter 171 of the Local Government Code.[1]

Charter schools may be established pursuant to chapter 12 of the Education Code. Under this chapter, "an independent school district, a school campus, or an educational program" may be operated under a charter as an alternative to operating in the manner generally required by the Education Code. TEX. EDUC. CODE ANN. § 12.001 (Vernon 1996). There are three classes of charter: a home-rule school district charter, a campus or campus program charter, and an open-enrollment charter. *See id.* § 12.002. We are concerned with the latter, which is governed by subchapter D of chapter 12. *See id.* § 12.002(3); *see also id.* § 12.002(1), (2) (subchapters B and C provide for a home-rule school district charter and a campus or campus program charter).

Open-enrollment charter schools are public schools that are substantially released from state education regulations and exist separate and apart from local independent school districts.[2] *See id.* § 12.105(a) (Vernon Supp. 2001) ("open-enrollment charter school is part of the public school system"). They receive public funds, *see id.* § 12.106 (Vernon 1996), and have the powers granted

---

[1]We note that House Bill 6 is pending before the 77th Texas Legislature and proposes the adoption of section 12.1053(b) of the Education Code, which will make Local Government Code chapter 171 applicable to members of governing bodies and officers of certain charter schools. *See* Tex. H.B. 6, 77th Leg., R.S., § 10 (2001).

[2]TEXAS EDUCATION AGENCY, TEXAS OPEN-ENROLLMENT CHARTER SCHOOLS: THIRD YEAR EVALUATION, 1998-99, SECTION I: INTRODUCTION TO PART ONE OF THE 1998-99 EVALUATION, *available at* http://www.tea.state.tx.us/charter/eval99/1.html.

to schools under title 2 of the Education Code, *see id.* § 12.104(a) (Vernon Supp. 2001). Open-enrollment charter schools are subject to federal and state laws and rules governing public schools, except that the Education Code and rules adopted under it apply to them only to the extent that the application of the provision or rule is specifically provided. *See id.* § 12.103(b) (Vernon 1996). Among other Education Code provisions, open-enrollment charter schools are expressly subject to provisions on public school accountability and high school graduation requirements. *See id.* § 12.104(b)(2)(E), (K) (Vernon Supp. 2001).[3] The schools are governed according to the governing structure described by the charter, and instruction is provided to students according to the charter. *See id.* § 12.102 (Vernon 1996); *see also id.* § 12.111 (Vernon Supp. 2001) (content of charter).

The State Board of Education may grant an eligible entity a charter to operate an open-enrollment charter school in a facility of a commercial or nonprofit entity or a school district. *See id.* § 12.101 (Vernon 1996). An "eligible entity" is a public or private institution of higher education, a governmental entity, or "an organization that is exempt from taxation under Section 501(c)(3), Internal Revenue Code of 1986," that is, a nonprofit corporation. *See id.*[4] You inform us that nonprofit corporations hold the vast majority of open-enrollment school charters granted by the State Board of Education.[5] Although charter schools may be established by various governmental entities and by private institutions of higher education as well as by nonprofit organizations, your letter indicates that you are concerned only about charter schools established by nonprofit corporations, and we will limit our discussion accordingly.

You ask whether the members of the governing board of an entity that sponsors an open-enrollment charter school and the members of the governing board of the charter school, if there is a separate board, are subject to the prohibitions against nepotism in Government Code chapter 573 and the regulation of local public officers' conflicts of interest in Local Government Code chapter 171. Although our answer will be limited to open-enrollment charter schools operated by private, nonprofit corporations, we point out that in the usual case, officers of governmental entities and boards are subject to Government Code chapter 573. *See Pena v. Rio Grande City Consol. Indep. Sch. Dist.,* 616 S.W.2d 658 (Tex. Civ. App.–Eastland 1981, no writ) (school board members, not

---

[3]*See* Tex. H.B. 6, 77th Leg., R.S., §§ 7, 8 (2001) (proposing amendments to sections 12.103 and 12.104 of the Education Code).

[4]*See also* TEXAS HOUSE OF REPRESENTATIVES, COMMITTEE ON PUBLIC EDUCATION, INTERIM REPORT TO THE 76TH TEXAS LEGISLATURE, at 11 (Dec.1998) (available at Legislative Reference Library). The tax exemption provided by section 501(c)(3) of the Internal Revenue Code applies to corporations and other organizations "organized and operated exclusively for religious, charitable, scientific . . . or educational purposes, . . . no part of the net earnings of which inures to the benefit of any private shareholder or individual . . . ." I.R.C. § 501(c)(3) (1994). To receive the exemption, such organizations may not participate in political campaigns involving an individual and are subject to statutory limits on activities to influence legislation. *See id.*

[5]*See* Letter from Mr. Jim Nelson, Commissioner of Education, to Honorable John Cornyn, Texas Attorney General, at 2 (Dec. 22, 2000) (on file with Opinion Committee). *See also* TEXAS HOUSE OF REPRESENTATIVES, COMMITTEE ON PUBLIC EDUCATION, INTERIM REPORT TO THE 77TH TEXAS LEGISLATURE, at 11 (Dec. 2000) (available at Legislative Reference Library).

superintendent, are officers within nepotism statute); Tex. Att'y Gen. Op. No. JC-0184 (2000) (board of Municipal Utility District); Tex. Att'y Gen. LA-148 (1977) (university regent). Similarly, local public officers are ordinarily subject to chapter 171 of the Local Government Code. *See, e.g., Walk v. State*, 841 S.W.2d 430 (Tex. App.–Corpus Christi 1992, pet. ref'd) (county judge); *Dallas County Flood Control Dist. No. 1 v. Cross*, 815 S.W.2d 271 (Tex. App.–Dallas 1991, writ denied) (board of flood control district); Tex. Att'y Gen. Op. Nos. JC-0184 (2000) (members of municipal utility district board); JC-0155 (1999) (members of city council).

Section 573.041 of the Government Code provides that "[a] public official may not appoint, confirm the appointment of, or vote for the appointment or confirmation of the appointment of an individual to a position that is to be directly or indirectly compensated from public funds" if the individual is related to the public official within a degree described by the statute. TEX. GOV'T CODE ANN. § 573.041(1) (Vernon 1994). If a public official is a member of a board that holds the appointment power, he or she may not appoint an individual who is related to any member of the board. *See id.* § 573.041(2). An official who violates this prohibition commits an offense involving official misconduct. *See id.* § 573.084(a).

Our question is whether the board members you inquire about are "public officials" for purposes of chapter 573 of the Government Code. "Public official" is defined as:

> (A)    an officer of this state or of a district, county, municipality, precinct, school district, or other political subdivision of this state;

> (B)    an officer or member of a board of this state or of a district, county, municipality, school district, or other political subdivision of this state; or

> (C)    a judge . . . .

*Id.* § 573.001(3).

Thus, the prohibition against nepotism applies to state officers and to officers of political subdivisions, including those political subdivisions specifically identified in the statute. A school operated under charter by a nonprofit corporation "is part of the public school system of this state," TEX. EDUC. CODE ANN. § 12.105(a) (Vernon Supp. 2001), but the nonprofit corporation that operates it is not a state level governmental body or a school district. Education Code section 12.103 provides that "[a]n open-enrollment charter school is subject to federal and state laws and rules governing *public schools* . . . ." *Id.* § 12.103 (Vernon 1996) (emphasis added). Government Code chapter 573 applies to officers of a "school district," not to officers of a "public school." *See* TEX. GOV'T CODE ANN. § 573.001(3)(A), (B) (Vernon 1994). Accordingly, section 12.103 of the Education Code does not render chapter 573 applicable to an officer of an open-enrollment charter school.

Moreover, the legislature has provided in Education Code section 12.105(b) that the governing body of an open-enrollment charter school is considered a governmental body for purposes of Government Code chapter 551, the Open Meetings Act, and Government Code chapter 552, the Public Information Act. *See* TEX. EDUC. CODE ANN. § 12.105(b) (Vernon Supp. 2001). Each of those Government Code provisions expressly applies to "a school district board of trustees." *See* TEX. GOV'T CODE ANN. §§ 551.001(3)(E), 552.003(1)(A)(v) (Vernon Supp. 2001). The legislature's enactment of a provision stating that open-enrollment charter schools were subject to the Open Meetings Act and the Public Information Act suggests that it did not consider the governing bodies of these schools to be school district boards.

An open-enrollment charter school is not "a district, county, municipality, precinct, . . . or other political subdivision of this state" within section 573.001(3) of the Government Code. *See id.* § 573.001(3) (Vernon 1994). In *Guaranty Petroleum Corp. v. Armstrong*, 609 S.W.2d 529 (Tex. 1980), the Texas Supreme Court described the characteristics of a "department, board, or agency of the state" and a "political subdivision." The court stated as follows:

> A political subdivision has jurisdiction over a portion of the State; a department, board or agency of the State exercises its jurisdiction throughout the State. Members of the governing body of a political subdivision are elected in local elections or are appointed by locally elected officials; those who govern departments, boards or agencies of the State are elected in statewide elections or are appointed by State officials. Political subdivisions have the power to assess and collect taxes; departments, boards and agencies do not have that power.

*Guar. Petroleum Corp..* 609 S.W.2d at 531.

A nonprofit corporation that operates an open-enrollment charter school does not have the characteristics of a state governing board or of a political subdivision. It does not have jurisdiction throughout the state or even over a portion of the state, but only over the school program that it operates. The directors of the nonprofit corporation are appointed pursuant to the provisions of the Non-Profit Corporation Act and are not elected or appointed by public officers. *See generally*, TEX. REV. CIV. STAT. ANN. art. 1396-2.14 (Vernon 1997). A nonprofit corporation has no authority to assess or collect taxes.

If a separate governing body for the open-enrollment charter school exists, its members will not be "public officials" within chapter 573 of the Government Code. The charter school itself is not a state level governmental body, or "a district, county, municipality, precinct, school district, or other political subdivision of this state." *See* TEX. GOV'T CODE ANN. § 573.001(3) (Vernon 1994). Its jurisdiction is no more extensive than the jurisdiction of the nonprofit corporation that established it. Its governing structure, including the manner in which officers and members of the governing

body are selected, is established in the charter. *See* TEX. EDUC. CODE ANN. § 12.111(8) (Vernon Supp. 2001). The legislature has expressly provided that an open-enrollment charter school has no authority to impose taxes. *See id.* § 12.102(4) (Vernon 1996).

We conclude that neither the members of the governing board of a nonprofit entity that sponsors an open-enrollment charter school nor the members of the governing board of the charter school, if there is a separate board, are officers or members "of a board of this state or of a district, county, municipality, school district, or other political subdivision of this state," under chapter 573 of the Government Code. *See* TEX. GOV'T CODE ANN. § 573.001(3) (Vernon 1994). Accordingly, these board members are not subject to chapter 573 of the Government Code.

Chapter 171 of the Local Government Code regulates conflicts of interest of local public officials. A local public official may not participate in a vote or decision on a matter that will have a special economic effect on a business entity or real property in which he or she has a substantial interest. *See* TEX. LOC. GOV'T CODE ANN. § 171.004 (Vernon 1999). Prior to a decision on the matter, the officer must file an affidavit with the record keeper of the governmental entity stating the nature and extent of the interest in the business entity or real property. *See id.* A public official's "substantial interests" include the officer's ownership interests in real property and business entities in excess of a minimum stated in the statute. *See id.* § 171.002. The officer's "substantial interests" also include substantial interests owned by certain of his or her near relatives. *See id.* § 171.002(c). Thus, there is a nepotism element in chapter 171 of the Local Government Code.

A "local public official" subject to Local Government Code chapter 171 is "a member of the governing body . . . of any district (including a school district), county, municipality, precinct, central appraisal district, transit authority or district, or other local governmental entity who exercises responsibilities beyond those that are advisory in nature." *Id.* § 171.001(1). We have already determined in connection with Government Code chapter 573 that neither the members of a governing board of a nonprofit corporation that sponsors an open-enrollment charter school nor the members of the governing board of the charter school are officers of a school district or any other political subdivision. *See generally* TEX. EDUC. CODE ANN. § 12.103 (Vernon 1996) ("open-enrollment charter school is subject to federal and state laws and rules governing *public schools*") (emphasis added). Thus, none of these persons are members of the governing body of the political subdivisions expressly named in the definition of "local public official." *See* Tex. Att'y Gen. LO-94-049 (municipal utility districts, counties, precincts are political subdivisions of the state).

Chapter 171 of the Local Government Code also applies to officers of a "local governmental entity," a term that chapter 171 does not define. After looking at this term in its context in chapter 171 of the Local Government Code and at definitions of it in other statutes, we conclude that the persons you inquire about are not members of the governing body of any "local governmental entity."[6]

---

[6]We note that the Texas Non-Profit Corporation Act includes provisions on transactions between a corporation

(continued...)

Words and phrases in statutes are to be read in context. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998). Under the rule of *ejusdem generis*, the phrase "local governmental entity," is to be construed to include entities like those expressly mentioned. *See County of Harris v. Eaton,* 573 S.W.2d 177, 179 (Tex. 1978); Tex. Att'y Gen. Op. No. JC-0014 (1999) at 3. The entities expressly mentioned are all public entities, and accordingly, a "local governmental entity" would encompass only public entities and would not include a private, nonprofit corporation.

Moreover, a review of other statutes that define "local governmental entity" supports our conclusion that this term refers to a public entity. The Whistleblower Law defines "local governmental entity" as a political subdivision of the state, including a county, municipality, public school district, or special purpose district or authority. *See* TEX. GOV'T CODE ANN. § 554.001(2) (Vernon Supp. 2001). *See also* TEX. HEALTH & SAFETY CODE ANN. § 366.002(5) (Vernon Supp. 2001) ("local governmental entity" means "a municipality, county, river authority or special district"). Some statutes expressly distinguish "local governmental entities" from private entities. For example, a sports facility district established by a county may contract with the federal government, the state, "local governmental entities including the county, and private entities." TEX. LOC. GOV'T CODE ANN. § 325.031(2) (Vernon 1999); *see also* TEX. HUM. RES. CODE ANN. § 31.0126(a)(3) (Vernon 2001) (development of employment program "operated by a nonprofit group or local governmental entity"); TEX. LOC. GOV'T CODE ANN. § 351.135(2) (Vernon 1999) (jail district may contract with the federal government, the state, "local governmental entities including the county, and private entities").

In some cases, the legislature has expressly defined "local governmental entity" to include nonprofit corporations. A statute on joint turnpikes and toll projects defines "local governmental entity" as "a political subdivision of the state, including a municipality or a county, . . . a group of adjoining counties, a defined district, or a nonprofit corporation, including a transportation corporation created under [Transportation Code] Chapter 431." TEX. TRANSP. CODE ANN. § 362.001(4) (Vernon 1999); *see also* TEX. GOV'T CODE ANN. § 2256.002(7) (Vernon 2000) ("local government" defined to include a nonprofit corporation acting on behalf of a political subdivision); TEX. TRANSP. CODE ANN. § 366.003(8) (Vernon 1999) ("local governmental entity" defined to include a nonprofit corporation). Thus, when the legislature has wished the phrase "local governmental entity" to include nonprofit corporations, it has expressly said so. Neither the members of the governing board of a nonprofit corporation that sponsors an open-enrollment charter school nor the members of the governing board of the charter school are officers of a "local governmental entity" under chapter 171 of the Local Government Code. Accordingly, they are not subject to this statute.

---

[6](...continued)
and its directors. *See* TEX. REV. CIV. STAT. ANN. art. 1396-2.28 (Vernon 1997) ("General Standards for Directors"); *id.* art. 1396-2.30 ("Interested Directors"); *see also* Tex. Att'y Gen. Op. No. JC-0338 (2001) at 3-4.

## S U M M A R Y

Open-enrollment charter schools may be established by a nonprofit corporation and certain other entities under Education Code chapter 12, subchapter D. Members of the governing board of a nonprofit corporation that establishes an open-enrollment charter school and the governing board of the school, if there is one, are not governmental entities subject to the prohibitions against nepotism in Government Code chapter 573 or the regulation of local public officers' conflicts of interest in Local Government Code chapter 171.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

SUSAN D. GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General - Opinion Committee