IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00210-CV

 

Texas Department of Transportation,

                                                                                    Appellant

 v.

 

Jimmy Don York, Individually and on behalf

of the Estate of Rebecca York, Deceased and 

James R. Bodiford, Jr., Individually and on 

behalf of the Estate of Rebecca York, Tonya 

Bodiford, and Shirley Fowler,

                                                                                    Appellees

 

 



From the 82nd District Court

Robertson County, Texas

Trial Court No. 04-03-16914-CV

 



SPECIAL NOTE










 

            On Friday, August 3, 2007 at 4:02
p.m., a date he knew I was not in the office,[1] Justice
Vance sent the following email to me and copied Justice Reyna and others:

Some time back, we agreed to notify you in advance
of the issuance of an opinion without your response under the deadlines.  

 

The Final Response Date for York was August 1, so
the opinion will issue as a unanimous opinion on August 8.  (Para. 4.01,
"failure to act by [the Final Response Date] constitutes approval of the
draft opinion . . . to be issued.")

 

(Insert and deletions as in original.)  I
responded as follows on Monday, August 6, 2007 at 8:29 a.m.:

Bill

This is wrong, on many levels.

Twg

 

Felipe,

If you empower Bill by voting with him to do this,
it is just wrong.  I have spent days in research and drafting but it is not yet
complete.  I gave a response, which is still my response if the opinion is
going to issue.  And this representation to the public is false.

twg

 

I received no response from either Justice Vance
or Justice Reyna before the opinion was issued on August 8, 2007. 
Notwithstanding their knowledge that I did not join the opinion, it was issued,
and for all intents and purposes would appear to the public and the parties, as
if it was a unanimous opinion of this Court.  It is not.

            What is attached as an appendix to
this Special Note is the status of my draft and indicates the status of my
research at the time I received Justice Vance’s email and sent my response. 
Because there is no point in concluding it at this juncture, I have attached it
to show some of the complexities of the issues that are otherwise being
ignored.  It is presented as it then existed with all the warts of a rough
draft before and without any editing.  It stops in mid-sentence, as did the
draft.  

            With this Special Note, I do not join
in the opinion or judgment of the Court, and because I do not know where the
research would have led me, I do not know if it would result in a concurring or
dissenting opinion.  See Johnson v. Baylor Univ., 188 S.W.3d 296, 311-312 (Tex. App.—Waco 2006, pet.
denied) (Special Note by Chief Justice Gray); Jones v. State, 188
S.W.3d 737, 738-739 (Tex. App.—Waco 2006, no pet.) (Special Note by Chief
Justice Gray); Tex. Genco, LP v. Valence Operating Co., 187 S.W.3d 118,
125-126 (Tex. App.—Waco 2006, pet. denied) (Special Note by Chief Justice Gray
issued Jan. 25, 2006); see also Krumnow v. Krumnow, 174 S.W.3d 820,
830-842 (Tex. App.—Waco 2005, pet. denied) (Special Note by Chief Justice Gray
issued Aug. 31, 2005).

 

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Special
Note delivered and filed August 9, 2007

Publish
(with the opinion issued August 8, 2007)




APPENDIX

            This case has consumed an inordinate
amount of my time.  I have read and studied many cases on the waiver of
sovereign immunity in the context of premises liability.  Of particular
importance in its application to the facts of this case is the limited
extension of the waiver when a licensee has been injured as the result of a
special condition.

            What I found of extraordinary interest
is how far the case law has strayed from what seems to be the clear structure of
the statute.  I tried to reconcile the cases with the statute but could not. 
While I am bound by the Supreme Court precedent interpreting the statute, which
I will discuss in the second part of this opinion, if I were writing on a clean
slate, the diagram for the State’s waiver that I would draw would be very
different.  In this regard, I will discuss the statute, standing alone, in the
first part of this opinion.  And in the third part I will discuss the
particular facts of this case. And then I will come to a conclusion applying
the facts of this case to the law as defined in the Supreme Court cases
interpreting and applying the statute.

PART I

The Statute

 

            The statute is often cited.  But to
appreciate the true simplicity of its design and application, it must be
closely studied.  The first relevant statute is the general waiver of sovereign
immunity which, generally, each litigant must bring themselves within to
successfully sue the State of Texas or a political subdivision of the State. 
It provides:

§ 101.021.  Governmental Liability

   A governmental unit in the state is liable for:

            (1) property damage, personal injury,
and death proximately caused by the wrongful act or omission or the negligence
of an employee acting within his scope of employment if:

                 (A) the property damage, personal
injury, or death arises from the operation or use of a motor-driven vehicle or
motor-driven equipment; and

                 (B) the employee would be
personally liable to the claimant according to Texas law; and

            (2) personal injury and death so
caused by a condition or use of tangible personal or real property if the
governmental unit would, were it a private person, be liable to the claimant
according to Texas law.

 

Tex. Civ. Prac. & Rem.
Code § 101.021.

            To boil this statute down to the
portions directly applicable to the facts of this case, we have the following:

A governmental unit in the state is liable for . .
. personal injury . . . and death so caused by a condition or use of . . . real
property if . . . a private person [would] be liable . . . according to Texas law.

 

Id.  Basically, this makes the State liable like and
under the same circumstances as any other property owner (including any other
occupier of the property legally responsible for the condition thereof) in the
State.

            But recognizing that under the common
law, the duty owed by a property owner was dependent upon the circumstances
under which the person entered upon the property, and recognizing the
difficulty of establishing that status as between a government and the public,
the legislature attempted to clarify that status, or more particularly, tried
to clarify the duty the State would owe to the public.  This attempt at
clarification was by reference to the common law’s terminology of the status of
the person when they entered upon the land.  The common law categorized
entrants as one of the following:

            1.         Trespasser

            2.         Licensee

            3.         Invitee

 

            The statute, however, only refers to
one of these categories and by doing so seems to establish the lowest duty owed
by the State to a member of the public as that duty owed to a licensee.  The
duty owed as a premise owner of property is set out, including limitations, as
follows:

§ 101.022.  Duty Owed:  Premise and Special
Defects

   (a) Except as provided in Subsection (c), if a
claim arises from a premise defect, the governmental unit owes to the claimant
only the duty that a private person owes to a licensee on private property,
unless the claimant pays for the use of the premises.

   (b) The limitation of duty in this section does
not apply to the duty to warn of special defects such as excavations or
obstructions on highways, roads, or streets or to the duty to warn of the
absence, condition, or malfunction of traffic signs, signals, or warning
devices as is required by Section 101.060.

   (c) If a claim arises from a premise defect on
a toll highway, road, or street, the governmental unit owes to the claimant
only the duty that a private person owes to a licensee on private property.

 

Acts 1985, 69th Leg., ch. 959, § 1,
eff. Sept. 1, 1985.  Amended by Acts 2005, 79th Leg., ch. 281, §
2.88, eff. June 14, 2005.

 

Tex. Civ. Prac. & Rem.
Code § 101.022.

            So the basic duty for all property is
that owed to a licensee.  § 101.022(a).  But if the claimant paid for the use
of the premises, the claimant was not owed the duty of a licensee.  By
referring to whether a payment was made for the “use of the premises,” it
appears, and has been so construed, that such a claimant is accorded the duty
owed an invitee.  [cite]  To avoid invitee status to persons who paid a toll
for the use of a road, however, subsection (c) limits the duty owed to that of
a licensee.

            The truly interesting provision, and
the one which has caused immeasurable uncertainty based on the plethora of cases
which have struggled with, is subsection (b).  First, it will be noted that it
is phrased as the section being one of limitation – “the limitation of duty in
this section.”  It is not at all clear how subsection (a), which is the only
other subsection that existed until 2005, limits any duty unless the claimant
who pays for  something other than for the “use of premises” is, nevertheless,
relegated to licensee status.

            In this regard, a person going to a
driver’s license office who was injured by a condition on the premises would be
“limited” to “licensee” status rather than having the benefit of “invitee”
status, even though they entered the premises and paid for the driver’s
license.  But whatever the limitation is, we know that it “does not apply to the
duty to warn of special defects such as excavations or obstructions on
highways, roads, or streets . . . .”  § 101.022(b).

            It again should be noted that the
exception to the limitation, like the exception in subsection (a) for a
claimant who “pays for the use of the premises,” does not specify what status
will be assigned to the claimant.  But what it specifically tells us is that
the limitation of the section “does not apply to the duty to warn of special
defects.”  The only logical way to read this exception to the limitation is not
that the status of the claimant changes, but that the limitation on the duty to
that of a licensee still applies to the claimant.  But regardless of that
status, the State nevertheless owes to that claimant a “duty to warn of special
defects such as excavations or obstructions.”

            So in summary, it breaks down like
this:

1.     
A person who pays for the use
of the premises is owed the highest duty, presumably that of an invitee;

2.     
For a special defect, the
claimant is owed the duty to warn of the special defect and otherwise is owed
the duty of a licensee;

3.     
For all other claimants for
premises defects from the State, including those who paid a toll for the use of
a road, the State’s duty is that owed to a licensee.

 

            This comes from an analysis of the
statute without regard to the case law.  It is a fairly simple statute to apply
if it is interpreted in this manner.  It has not been interpreted in this
manner.

PART II

Oh, The Cases

 

            The number of cases construing or
applying the TTCA (Texas Tort Claims Act) are too numerous to even list, much
less to discuss them in detail.  The primary focus of this part of the opinion
will be to address some of the more significant, albeit inadvertent, turns that
the interpretation of the section of primary interest have made.

            We begin with Harris County v.
Eaton, 573 S.W.2d 177 (Tex. 1978).  The question in this case was whether
an abnormally large hole in a road was an excavation, thus making it a special
defect.  Though the case was construing the predecessor to the current statute,
it had the same proviso in it that is now contained in subsection 121.022(b). 
The statute stated:

Provided, however, that the limitation of duty
contained in this subsection [limiting the duty to that of a licensee] shall not
apply to the duty to warn of special defects such as excavations or
obstructions on highways, roads, or streets, . . . .

 

            The court, after some other
significant discussion of the scope and application of the statute, goes on to
discuss the “proviso.”  The court states that:

The proviso . . . was meant to enlarge the
liability in some instances by imposing the duty to warn when there was
a special defect.  Accordingly we hold that the abnormally large hole was a
special defect and the County had the duty to warn as in the case of a
duty one owes to an invitee.

 

It was undisputed that Harris County had provided no warning.

            From this case we fast forward 14
years, an entirely new Supreme Court, a recodified statute and 









[1] One of several reasons I was absent was so the
carpet in my office could be cleaned rather than unnecessarily replaced, as a
majority of the Court has voted regarding replacement of carpet for their own
offices and the courtroom at a price tag to the taxpayers of almost $20,000.