**Affirmed and Opinion filed May 18, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00265-CV

---

### ZACHRY ENGINEERING CORPORATION, Appellant

### V.

### ENCINA DEVELOPMENT GROUP, LLC, Appellee

---

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2021-02701**

---

### OPINION

This interlocutory appeal concerns a question of first impression involving the exception to the certificate-of-merit requirement applicable in actions against a licensed or registered professional. *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a), (h). Appellant Zachry Engineering Corporation ("Zachry") appeals the denial of its motion to dismiss the counterclaim asserted by appellee Encina Development Group, LLC ("Encina"). *See id.* § 150.002(f). In one issue, Zachry argues the trial court erred when it denied its motion to dismiss because Encina did

not file a certificate of merit in support of its counterclaim for damages against Zachry, which arose out of Zachry's provision of professional engineering services, as required by Texas Civil Practice and Remedies Code § 150.002. *See id.* § 150.002(a). We affirm.

## I. BACKGROUND

On March 8, 2017, Zachry and Encina executed a contract for Zachry to provide engineering services in Encina's project. On January 15, 2021, Zachry filed suit against Encina; Encina Solutions, LLC; Encina Chemicals, LLC; and Charles Costenbader. In its live pleading, Zachry asserted claims for suit on a sworn account, breach of contract, and declaratory judgment and sought actual damages of at least $773,255.98. Zachry alleged that Encina terminated the relationship on June 28, 2018, about one month before Zachry would have completed the work on Task Order 2, and that Encina subsequently refused to pay three of Zachry's invoices.

On April 5, 2021, Encina filed a counterclaim against Zachry for breach of contract, seeking damages, including out-of-pocket costs. Encina alleged that Zachry failed to complete Task Order 2 by December 2017 as agreed by the parties and that Encina terminated the relationship and hired others to perform re-working and re-design efforts that were Zachry's responsibility under the parties' agreement and Task Order 2.

Zachry filed a motion to dismiss Encina's counterclaim, arguing that Encina failed to attach a certificate of merit to its counterclaim. *See id.* In response, Encina argued the requirement in § 150.002(a) was inapplicable to its counterclaim because Zachry initiated the lawsuit and sought to recover fees arising out of the provision of professional services. *See id.* § 150.002(h) ("This statute does not apply to any suit or action for the payment of fees arising out of the provision of

professional services.").

On March 22, 2022, the trial court denied Zachry's motion to dismiss. This interlocutory appeal followed. *See id.* § 150.002(f) ("An order granting or denying a motion for dismissal is immediately appealable as an interlocutory order.").

## II. DISCUSSION

In its sole issue, Zachry argues the trial court erred when it denied Zachary's motion to dismiss because Encina did not file a certificate of merit in support of its counterclaim.

### A. STANDARD OF REVIEW

We review a trial court's order on a motion to dismiss under § 150.002 for an abuse of discretion. *CBM Eng'rs, Inc. v. Tellepsen Builders, L.P.*, 403 S.W.3d 339, 342 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

We review questions of statutory interpretation de novo. *Pedernal Energy, LLC. v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 491 (Tex. 2017); *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). Our primary objective in construing statutes is to give effect to the Legislature's intent. *Molinet*, 356 S.W.3d at 411. The plain meaning of the text is the best expression of legislative intent. *Id.* When a statute is not ambiguous on its face, it is inappropriate to use extrinsic aids to construe the unambiguous statutory language*, Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018), and "'we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results.'" *In re Panchakarla*, 602 S.W.3d 536, 540 (Tex. 2020) (orig. proceeding)

3

(per curiam) (quoting *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)); *see also Molinet*, 356 S.W.3d at 414 ("Construing clear and unambiguous statutes according to the language actually enacted and published as law—instead of according to statements that did not pass through the law-making processes, were not enacted, and are not published as law—ensures that ordinary citizens are able to rely on the language of a statute to mean what it says.").[1] A statute is ambiguous if its words are susceptible to two or more reasonable interpretations and we cannot discern legislative intent from the language alone. *Rodriguez*, 547 S.W.3d at 838; *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n.*, 511 S.W.3d 28, 41 (Tex. 2017).

We read statutes contextually to give effect to every word, clause, and sentence because every word or phrase is presumed to have been intentionally used with a meaning and a purpose. *Rodriguez*, 547 S.W.3d at 838; *see Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam) ("We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted."). We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired. *See* Tex. Gov't Code Ann. § 311.011(b); *Rodriguez*, 547 S.W.3d at 838; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). Otherwise, we construe the statute's words according to their plain and common meaning unless a more

---

[1] Section 311.023 of the Code Construction Act permits courts to consider a statute's legislative history "whether or not the statute is considered ambiguous on its face." *See* Tex. Gov't Code Ann. § 311.023(3). However, the Supreme Court has held that even though this section may grant us legal permission, "not all that is lawful is beneficial." *Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 136 (Tex. 2018). "Constitutionally, it is the courts' responsibility to construe statutes, not the legislature's." *Id.* "In fulfilling that duty, we do not consider legislative history or other extrinsic aides to interpret an unambiguous statute because the statute's plain language most reliably reveals the legislature's intent." *Id.* "We have therefore 'repeatedly branded' reliance on extrinsic aids as 'improper' and 'inappropriate' when statutory language is clear.'" *Id.*

precise definition is apparent from the statutory context or the plain meaning yields an absurd result. Tex. Gov't Code Ann. § 311.011(a); *City of Rockwall*, 246 S.W.3d at 625–26. To determine a term's common, ordinary meaning, we typically look first to dictionary definitions. *Rodriguez*, 547 S.W.3d at 838.

**B.     APPLICABLE LAW**

Texas Civil Practice and Remedies Code § 150.002, titled "Certificate of Merit," provides in relevant part:

> (a) In any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional, a claimant shall be required to file with the complaint an affidavit of a third-party licensed architect, licensed professional engineer, registered landscape architect, or registered professional land surveyor who:
>
>> (1) is competent to testify;
>>
>> (2) holds the same professional license or registration as the defendant; and
>>
>> (3) practices in the area of practice of the defendant and offers testimony based on the person's:
>>
>>> (A) knowledge;
>>>
>>> (B) skill;
>>>
>>> (C) experience;
>>>
>>> (D) education;
>>>
>>> (E) training; and
>>>
>>> (F) practice.
>
> (b) The affidavit shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim. The third-party licensed architect, licensed professional

5

engineer, registered landscape architect, or registered professional land surveyor shall be licensed or registered in this state and actively engaged in the practice of architecture, engineering, or surveying.

. . . .

(e) A claimant's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant. This dismissal may be with prejudice.

Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a)–(b), (e); *see also LaLonde v. Gosnell*, 593 S.W.3d 212, 216 (Tex. 2019) ("The certificate-of-merit requirement is a substantive hurdle that helps ensure frivolous claims are expeditiously discharged."). Section 150.002 includes an exemption for the certificate-of-merit requirement, which provides that the statute "does not apply to any suit or action for the payment of fees arising out of the provision of professional services." Tex. Civ. Prac. & Rem. Code Ann. § 150.002(h).

## C.    ANALYSIS

Zachry argues that the exemption in § 150.002(h) does not apply to Encina's counterclaim, and thus, Encina was required to file a certificate of merit along with its counterclaim. *See id.* § 150.002(a), (h). This is a question of first impression for this Court.

The plain language of the statute states "[t]his statute does not apply to any suit or action for the payment of fees arising out of the provision of professional services." *See id.* § 150.002(h). Chapter 150 does not define "suit" or "action." *Jaster v. Comet II, Const., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014) (plurality op.); *see* Tex. Civ. Prac. & Rem. Code Ann. § 150.001. Thus, we will give these terms their ordinary meaning. *Jaster*, 438 S.W.3d at 563; *see City of Rockwall*, 246 S.W.3d at 625–26.

The common meaning of the term "action" refers to an entire lawsuit or cause or proceeding, not to discrete "claims" or "causes of action" asserted within

6

a suit, cause, or proceeding. *Jaster*, 438 S.W.3d at 563–64; Black's Law Dictionary (11th ed. 2019) (defining "action" as "[a] civil or criminal judicial proceeding"). "The term 'action' is generally synonymous with 'suit,' which is a demand of one's rights in court." *Jaster*, 438 S.W.3d at 564 (quoting *Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex. 1995)). A suit, in turn, is "any proceeding in a court of justice by which an individual pursues that remedy in a court of justice which the law affords him." *Id.* (quoting *H.H. Watson Co. v. Cobb Grain Co.*, 292 S.W. 174, 176 (Tex. 1927)). Although the word "suit" can be "more general in its comprehension than the word 'action,'" both terms refer to a judicial proceeding in which parties assert claims for relief. *Id.* Thus, under the common definition, "[a]n action is a judicial proceeding, either in law or in equity, to obtain certain relief at the hands of the court." *Id.* Historically, "action" referred to a judicial proceeding in a court of law, while "suit" referred to a proceeding in a court of equity. *Id.* (citing Black's Law Dictionary).

Both "suit" and "action" are broad terms that encompass a counterclaim, as a counterclaim is asserted as part of an action or suit. *See id.* at 563–64. Additionally, the statute is not ambiguous, as it is not subject to two reasonable interpretations. *See Rodriguez*, 547 S.W.3d at 838. Instead, the plain text of the statute indicates that the language used—"action" and "suit"—are interchangeable and broad terms covering an entire legal proceeding, including a defendant's counterclaims against a provider of professional services. *See Jaster*, 438 S.W.3d at 563–64 ("By using the terms 'action' and 'arbitration proceeding' together with the conjunction 'or,' the statute treats the two terms as having a similar meaning."); *see also id.* at 566 ("The meaning of individual words 'may be ascertained by reference to words associated with them in the statute' and . . . when two or more words of analogous meaning are employed together in a statute, they are

7

understood to be used in their cognate sense, to express the same relations and give color and expression to each other." (quoting *Harris County v. Eaton*, 573 S.W.2d 177, 181 (Tex. 1978))).

Zachry argues that this interpretation of the statute would lead to absurd results because the purpose of the statute is to protect providers of professional services from meritless lawsuits. However, while the purpose of the statute is to ensure frivolous claims against providers of professional services are expeditiously discharged, the Legislature has included a clear and unambiguous exception in § 150.002(h). The purpose of § 152.002(a) is not defeated by exempting the certificate-of-merit requirement for counterclaims in suits or actions for the payment of fees arising out of the provision of professional services because the provider's claim for the recovery of fees may put into question the quality of services, the performance of the services, and the fees owed. We cannot conclude that our interpretation of the statute leads to an absurd result, and thus reject Zachry's argument. *See Jaster*, 438 S.W.3d at 569 ("The 'bar for reworking the words our Legislature passed into law is high, and should be. The absurdity safety valve is reserved for truly exceptional cases, and mere oddity does not equal absurdity." (quoting *Combs v. Health Care Serv. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013))); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) (noting that we construe statutes and related provisions as a whole, not in isolation); *see also, e.g.*, *Stillwater Capital v. HKS, Inc.*, No. 05-20-00749-CV, 2021 WL 2154617, at *3–4 (Tex. App.—Dallas May 27, 2021, pet. dism'd) (mem. op.) (concluding that § 152.002(h) applied to defendant's counterclaim).

Finally, we note that our interpretation is supported by the Legislature's amendments to the statute in 2019, wherein the Legislature amended § 150.002(a)'s language to state that the certificate-of-merit requirement applied to

any "claimant," instead of the previous language that it applied to any "plaintiff"; indicating an intent that counterclaims for damages arising out of the provision of professional services were required to be accompanied by a certificate of merit. Act of June 10, 2019, 86th Leg., R.S., ch. 661 (S.B. 1928) § 2, 2019 Tex. Sess. Law Serv. Ch. 661; *see Thompson Hancock Witte & Assocs., Inc. v. Stanley Spurling & Hamilton, Inc.*, 650 S.W.3d 741, 746–47 (Tex. App.—Houston [14th Dist.] 2022, no pet.) ("We conclude that when the Legislature amended the . . . statute to change 'plaintiff' to 'claimant' it intended to impose the certificate of merit filing requirement on any party asserting a claim against a licensed professional covered by the statute."). The Legislature, however, left intact the language in § 150.002(h) providing that the certificate-of-merit requirement was exempted in any action or suit for the payment of fees arising out of the provision of professional services. *See Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 748 (Tex. 2012) ("We presume the Legislature was aware of relevant caselaw when it enacts or amends statutes."); *see also Jaster*, 438 S.W.3d at 571 (stating that cross-claimants and third-party plaintiffs are not the same as a "plaintiff" who initiates a lawsuit and therefore were not required to file a certificate of merit under prior version of § 152.002(a)).

We hold that the plain text of the statute provides that a certificate of merit is not required to be filed by a counterclaimant in any "suit or action" for payment of fees arising out of the provision of professional services. *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(h). We overrule Zachry's sole issue.

9

### III. CONCLUSION

We affirm the trial court's order.


/s/    Margaret "Meg" Poissant
       Justice


Panel consists of Justices Wise, Jewell, and Poissant.