**CITY OF DALLAS, Appellant,**

v.

**Kenneth REED, Appellee.**

**No. 05–06–01652–CV.**

Court of Appeals of Texas, Dallas.

April 25, 2007.

Patricia M. Medrano, Dallas, for Appellant.

Mark A. Ticer, Roger M. Tafel, Law Office of Mark A. Ticer, Dallas, for Appellee.

Before Justices WHITTINGTON, FRANCIS, and LANG.

## OPINION

Opinion By Justice LANG.

The City of Dallas appeals the trial court's denial of its plea to the jurisdiction. It is the contention of the City of Dallas that Dr. Kenneth Reed, appellee, did not meet his burden to show the City waived immunity from suit under the Texas Tort Claims Act for a premise liability cause of action under Texas Civil Practice and Remedies Code § 101.022 because Reed did not prove the condition of the roadway constituted a special defect, or in the alternative, a premise defect. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 7, 2004, while operating his motorcycle in the westbound turn lane of the 8100 block of Walnut Hill Lane in Dallas, Texas, Dr. Kenneth Reed had a single vehicle accident where his motor cycle turned over. In a deposition submitted by the City, Reed testified as he was driving westbound he slowed down to change into the left turn lane. According to Reed, "the turn lane was 2 to 3 inches higher than the lane I was in," and "approximately 20 or 30 yards" in length. Reed acknowledged that roadways have flaws and cracks in them. However, he described the difference in elevation he encountered as "sharply offset" and "a real serious abnormality in the roadway." Further, he did not see the difference in elevation as he was approaching the turn lane and changing lanes because "right on top of it, you don't have a vantage point to be able to see it."

Reed contends his accident was caused by the two to three inch difference in elevation between lanes in the roadway. Reed filed a lawsuit against the City of Dallas for the personal injuries he sustained in the accident alleging this two to three inch difference in elevation constituted a special defect, or in the alternative, a premise defect.

The City answered asserting a general denial, an affirmative defense of governmental immunity, and a plea to the jurisdiction. In its plea to the jurisdiction, the City argued the trial court lacked subject matter jurisdiction because Reed has not sufficiently alleged a special defect or premise defect in order to show a waiver of the City's immunity under Texas Civil Practice and Remedies Code § 101.022.

In addition to Reed's deposition, the City attached affidavits, pictures, and a police report with its plea to the jurisdiction. The police officer's accident report, dated November 7, 2004, described the roadway as follows:

"Investigator found the concrete pad for the left turn lane was an average of 2 inches higher that [sic] the other lanes. The pad edge was vertically sharp, and was at approximately 90 degrees to the other surface."

Also, the City submitted the affidavit of Mordell Robinson to explain its street inventorying and grading system. Robinson, an agent for the City of Dallas Public Works and Transportation Department responsible for inventorying streets located within the City of Dallas, testified the 8100 block of Walnut Hill Lane was given a "C" rating in April of 2004. According to Robinson's affidavit, the streets within the City of Dallas are evaluated and graded annually based on a system with categories which describe the street surface conditions from "A" to "U." The categories are defined as follows:

"A" means GOOD and is defined as good riding surface, no noticeable wear or obvious defects.

"B" means ACCEPTABLE and is defined as good riding surface, but has some minor surface defects and wear indications. Some good cut or patch repairs may exist.

"C" means FAIR and is defined as slightly rough surface, edges beginning to break down, some gutter/street misalignments, small areas of spalling, cracks, and cut repairs beginning to require attention.

"D" means POOR and is defined as uncomfortable and/or badly worn riding surface, extensive spalling, cracks, paving failures, poor patches and/or cut repairs, edge breakdown, and gutters/street misalignment.

"E" means UNACCEPTABLE and is defined as very rough and/or uneven riding surface, drainage problems, large surface areas in bad condition, many unsatisfactory patches and cut repairs.

"U" means POOR REPAIRS and is defined as a condition caused by utility cut repair. Street is otherwise is [sic] in "C" or better condition.

Reed filed a response to the City's plea to the jurisdiction arguing the trial court should deny the City's plea because the condition of the roadway constituted a special defect. Reed included the deposition testimony of Wyvonia Forte, a surface street inspector for the City of Dallas for approximately twenty years. Forte acknowledged the "rating system" explained by the Robinson affidavit and stated she rated the 8100 block of Walnut Hill Lane a "C" in February 2004. She testified:

FORTE: My inspection revealed that we had approximately a 30 percent drop-off in there. We had drop-off, you know, of these joints. We had 20 percent of joint one and ten percent of joint two, which shows like 30 percent drop-off in that block.

COUNSEL: And that would be—is a 30 percent drop-off, is that substantial?

FORTE: You're saying substantial meaning . . .

COUNSEL: Something that needs to be looked at that's a drop-off that could cause the danger that you were talking about, losing control of a car or in this case we're talking about today a motorcycle.

FORTE: Well, I'm saying it could be dangerous, something that-yeah, it required attention, yes.

COUNSEL: And you were aware—in other words, what you're telling us today, you were aware of this condition back in February of 2004, the 30 percent drop-off and the 10 percent drop-off?

FORTE: Yes, I was aware of that.

COUNSEL: And you reported that to the city, correct?

FORTE: I give them my report daily. That's the report that we do. It's not like we go in and verbally say hey, we got a drop-off there. We give them our report.

Then, Forte acknowledged, based on photographs taken from the scene of the accident in November of 2004, that the roadway condition would have been a "D" rating at that time. Forte confirmed the change in the roadway condition "doesn't appear overnight."

On November 22, 2006, the trial court denied the City's plea to the jurisdiction. The City now brings this interlocutory appeal.

## II. SPECIAL DEFECT VERSUS PREMISE DEFECT

The City contends there was no waiver of governmental immunity because the two

to three inch difference in elevation did not constitute a special defect, or in the alternative, a premise defect. The City argues the facts of this case do not constitute a special defect because "objects that have been found to be special defects by courts involved unusual characteristics, and have been relatively large." Reed responds a special defect existed because the evidence revealed the two to three inch difference in elevation was "sharp" and "a dangerous condition." Also, Reed argues size is just one factor in determining whether a condition constitutes a special defect. We decide this issue against appellant.

## A. Standard of Review

 A plea to the jurisdiction contests a trial court's subject matter jurisdiction. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999); *Benefit Realty Corp. v. City of Carrollton,* 141 S.W.3d 346, 348 (Tex.App.-Dallas 2004, pet. denied). The purpose of the plea "is not to force the plaintiffs to preview their case on the merits, but to establish a reason why the merits of the plaintiffs' claims should never be reached." *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). Whether a court has subject matter jurisdiction is a matter of law. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226–27 (Tex.2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 855 (Tex.2002); *Dallas County v. Wadley,* 168 S.W.3d 373, 376 (Tex.App.-Dallas 2005, pet. denied). Accordingly, we review a challenge to the trial court's subject matter jurisdiction *de novo. Miranda,* 133 S.W.3d at 228; *Benefit Realty Corp.,* 141 S.W.3d at 348.

 In *Miranda,* the Texas Supreme Court identified the regimen courts are to follow in analyzing whether a plea to the jurisdiction should be granted. *See Miranda,* 133 S.W.3d at 226–27. When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.; Tex. Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d at 446. "However, if the plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Miranda,* 133 S.W.3d at 227; see *Bland Indep. Sch. Dist.,* 34 S.W.3d at 554 (confining the evidentiary review to evidence that is relevant to the jurisdictional issue). "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Miranda,* 133 S.W.3d at 227. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.*

## B. Applicable Law

 The Texas Tort Claims Act provides a governmental entity may be liable for personal injuries in a premise liability case. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.022 (Vernon Supp.2006). The elements of proof of such a claim are determined by whether the condition is a premise defect or special defect. *See State Dep't. of Highways v. Payne,* 838 S.W.2d 235 (Tex.1992). If the condition is a premise defect, the governmental unit owes the duty a private landowner owes a licensee. Tex. Civ. Prac. & Rem.Code Ann. § 101.022(a); *Payne,* 838 S.W.2d at 237. A licensee must prove that the owner actually knew of the dangerous condition. *Id.* If the condition is a special defect, the governmental unit owes the duty a private landowner owes an invitee. Tex. Civ. Prac. & Rem.Code Ann. § 101.022(b); *Payne,* 838 S.W.2d at 237. An invitee need only prove

that the owner knew or reasonably should have known of the condition. *Payne,* 838 S.W.2d at 237. Under either theory, the plaintiff must prove the condition of the premises created an unreasonable risk of harm to the licensee or invitee, the owner failed to exercise ordinary care to protect the licensee or invitee from danger, and the owner's failure was a proximate cause of injury to the licensee or invitee. *Payne,* 838 S.W.2d at 238.

 Determining whether a condition is a special defect or a premise defect is a question of law. *State v. Rodriguez,* 985 S.W.2d 83, 85 (Tex.1999); *Payne,* 838 S.W.2d at 238. Examples of special defects are set forth in the statute and include "excavations or obstructions on highways, roads, or streets." TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(b). Special defects present "an unexpected and unusual danger to ordinary users of roadways." *Rodriguez,* 985 S.W.2d at 85; *Payne,* 838 S.W.2d at 238. "Special defects unexpectedly and physically impair a car's ability to travel on the road." *Rodriguez,* 985 S.W.2d at 85. In addition, a factor to consider in determining whether a defect exists is the size of the defect. *See, e.g. Morse v. State,* 905 S.W.2d 470, 475 (Tex. App.-Beaumont 1995, writ denied)(finding shoulder drop-off ranging from six to twelve inches a special defect); *County of Harris v. Eaton,* 573 S.W.2d 177, 179 (Tex.1978)(finding six to ten inch deep oval-shaped hole extending across ninety percent of the width of the highway a special defect).

### C. Application of Law to Facts

 The City argues that its sovereign immunity has not been waived under the Texas Tort Claims Act because Reed did not prove the two inch difference in elevation was a special defect, or in the alternative, a premise defect under § 101.022. According to the City, the small size of the alleged defect in this case is determinative

because typically special defects, "involved unusual characteristics, and have been relatively large." We disagree.

 The record reflects the alleged defect was an, "average of 2 inches higher that [sic] the other lanes." Texas case law instructs "size" is one factor to be considered in determining whether a roadway condition constitutes a "special defect." *Morse,* 905 S.W.2d at 475; *Eaton,* 573 S.W.2d at 179. The focus of our analysis is whether the alleged condition presents "an unusual or unexpected danger to the normal users of roadways." *Rodriguez,* 985 S.W.2d at 85; *Payne,* 838 S.W.2d at 238. A normal user of the roadway, such as Reed, would not expect to encounter a difference in elevation that he described as "a real serious abnormality in the roadway." Reed stated he did not see the difference in elevation as he was approaching the turn lane because "right on top of it, you don't have a vantage point to be able to see it." Further, the accident report describes the nature of the drop-off and states, "the pad edge was vertically sharp, and was at approximately 90 degrees to the other surface."

In addition, the testimony of Forte, a surface street inspector for the City, provides support the two to three inch difference in elevation was a special defect. According to Forte, she rated the 8100 block of Walnut Hill Lane a "C" in February 2004. The City's grading system, provided by Robinson's affidavit, denotes "C" as meaning "Fair" and is defined as "slightly rough surface, edges beginning to break down, some gutter/street misalignments, small areas of spalling, cracks, and cut repairs beginning to require attention." However, Forte testified that at the time of the accident, she would grade the roadway condition as having decreased to a "D" rating. A "D" rating is defined as "Poor" meaning "uncomfortable and/or

badly worn riding surface, extensive spalling, cracks, paving failures, poor patches and/or cut repairs, edge breakdown, and gutters/street misalignment." Forte described the the difference in elevation, "Well, I'm saying it could be dangerous, something that—yeah, it required attention, yes." The description of the roadway condition in the accident report and the testimony of both Reed and Forte demonstrate the two to three inch difference in elevation in this case was "an unusual or unexpected danger to the normal users of roadways." *Payne*, 838 S.W.2d at 238.

We conclude the difference in elevation was a special defect as a matter of law. Therefore, we need not address the City's argument that the difference in elevation was not a premise defect. Accordingly, we decide this issue against the City.

## III. CONCLUSION

Applying a *de novo* standard of review, we conclude the trial court did not err when it denied the City's plea to the jurisdiction. The judgment of the trial court is affirmed.