In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00180-CV**
_____

**TEXAS DEPARTMENT OF TRANSPORTATION, Appellant**

**V.**

**OSCAR CAMARILLO, Appellee**

On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. A-0205610

**MEMORANDUM OPINION**

Appellant Texas Department of Transportation ("TxDOT") appeals a judgment in favor of Appellee Oscar Camarillo ("Plaintiff" or "Camarillo").

Background

Camarillo lost control of his motorcycle on January 7, 2020, when he exited Interstate 10 in Beaumont, Texas, and he was in an accident. Camarillo is employed as a trooper with the Texas Department of Public Safety, but his motorcycle accident occurred when he was off duty. Camarillo filed a lawsuit against TxDOT under the

Texas Tort Claims Act ("TTCA") to recover damages, and he alleged that the accident was proximately caused by TxDOT's negligence. According to the Petition,[1] Camarillo struck a defect in the roadway as he exited; he then lost control of his motorcycle, and he suffered injuries. In the Petition, Camarillo alleges that the roadway was under the actual control of TxDOT, portions of the road had pavement worn away causing an uneven and unsafe condition, the condition of the road constituted a special defect or a premises defect, and TxDOT had both actual and constructive knowledge of the unreasonably dangerous condition. Camarillo alleges that TxDOT failed to properly inspect, repair, and maintain the roadway where the condition was located, and that TxDOT's negligence proximately caused Camarillo's injuries, damages, and losses. Camarillo also alleges that TxDOT failed to use ordinary care to either warn Camarillo of, or make reasonably safe, the dangerous condition, and TxDOT had both actual and constructive knowledge of the dangerous condition, and the licensee did not have such knowledge. Camarillo states in his Petition that prior to his accident, he had no knowledge of the dangerous condition existing at the site of the accident, and that the dangerous condition presented an unexpected and unusual danger to him and other users of the roadway.

---

[1] We refer to the live petition at the time of trial, Plaintiff's Second Amended Petition, as the "Petition."

TxDOT filed an Answer,[2] asserting defenses of sovereign and official immunity under the TTCA, including sections 101.021 (governmental liability) and 101.022 (duty owed), among other sections. TxDOT generally denied all of Camarillo's allegations and asserted the affirmative defenses of Camarillo's contributory negligence and that TxDOT owed no duty regarding the roadway's condition because the condition was open and obvious.

## Evidence at Trial[3]

Testimony of Oscar Camarillo

Oscar Camarillo testified that he became a trooper with the Texas Department of Public Safety in 2018 and received a promotion to special agent in 2022. On January 7, 2020, Camarillo was off-duty and driving his newly purchased motorcycle on I-10 eastbound in Beaumont when he was involved in an accident around 8 p.m., while exiting near College Street. According to Camarillo, he had never taken that exit on a motorcycle before the accident, but he was sure that he had taken that exit—Exit 851—before while on duty in his patrol vehicle. Camarillo testified as to what he remembered about the accident:

---

[2] We refer to the live answer at the time of trial, Defendant Texas Department of Transportation's Original Answer to Plaintiff's Second Amended Petition, as the "Answer."

[3] We limit our summary of the evidence at trial to the evidence we find pertinent to the issues on appeal.

3

> . . . I took the exit; and I - - I remember seeing the dark color of the - - the different textures of the road. So, the concrete and the asphalt. And, so, I looked a little ahead; and the next thing I remember is I was jolted from my motorcycle. And when I was spinning on the road, the only thing I remember is seeing headlights behind me and my motorcycle continuing in that motion.

Camarillo recalled that he believed that he was traveling 40 to 50 miles per hour, his motorcycle hit something in the roadway, it propelled his motorcycle forward launching him off the motorcycle, he rolled on the asphalt, he landed in the center of the service road, and the accident caused him to suffer injuries.

He testified that the photographs taken the week after the accident depict the joint in the roadway that caused his accident. The photographs were admitted into evidence as Plaintiff's Exhibit 2. According to Camarillo, as he took the exit, he did not apply the brake, and he did not see the condition in the roadway that caused the accident. Camarillo agreed that the photographs show a joint in the roadway between the asphalt and the concrete that covers the entire lane of travel and show repairs to the roadway on one side as well as a "little hole" in the joint. Camarillo agreed that his motorcycle struck the joint, but he did not know which side of the lane he struck. Camarillo testified that he considered the joint to be a dangerous condition in the roadway that was unexpected and that no warning signs or cones put him on notice of the condition prior to his accident.

On cross-examination, Camarillo agreed that when he had passed over the same "bump" in the roadway when he was driving his patrol vehicle, it did not cause

4

an accident. According to Camarillo, he encountered the same bump on his way into town for the trial, and he testified that the bump is "doable in a car[,]" but he believes that where the asphalt meets the concrete is not a safe condition. Camarillo recalled that the first time he had ever been on a motorcycle was less than a week before the accident, and he had just completed the certification training required to operate a motorcycle.

Testimony of Deputy Allday

Deputy William Allday with the sheriff's office testified that he was a state trooper with the Texas Department of Public Safety for about three years, and that during that time he was trained to investigate motor vehicle crashes. Deputy Allday recalled that he investigated Camarillo's accident and created an accident report, admitted at trial as Plaintiff's Exhibit 1. Allday knew Camarillo prior to the accident because they were both state troopers, but he testified that they were not friends outside of work. According to Deputy Allday, he is familiar with Exit 851 and took the exit often, and he recalled that "there's always been a bump there[] since [he has] worked as a state trooper or in the sheriff's office."

Deputy Allday testified that he arrived at the scene about ten minutes after he was dispatched to the scene of the accident. He testified that he normally would not investigate an accident in the city of Beaumont, but he was instructed to investigate this accident. According to Allday, his report noted that there was a large pothole

5

covering a portion of a bump in the roadway on the exit. In Deputy Allday's accident report, admitted at trial as Plaintiff's Exhibit 1, he noted that Camarillo's motorcycle "struck a large pot hole in the lane of travel[,] lost control and began to flip[]" and Camarillo landed in a different location than his motorcycle. Allday testified that after investigating, he determined that the bump and the hole caused the accident, and he did not ask Camarillo any specifics about the accident because Camarillo was injured and not talking much.

Allday testified that he did not remember the pothole being there before, but he remembered that there are spots "right there on that exit that are continuously having to be patched or fixed[.]" He recalled that there was a bump and a pothole at the accident scene. Deputy Allday testified that the pothole was "anywhere from 2 to 3 feet wide as far as crossing the road[] . . . and then several inches deep[,]" and he remembered "stepping in or around it and it coming up like around [his] ankle or above it." Allday agreed that the bump was a common thing for him to see in the area, but he believed that the pothole was an uncommon condition for the roadway. According to Allday, he did not know if he had ever seen the exact same pothole when he had taken the exit prior to Camarillo's accident, but he knew "that's a common area of issues." Deputy Allday testified that, based on his personal experience driving over the condition and through his experience investigating crashes, he believes the condition of the roadway was unreasonably dangerous for a

6

motorcycle driver and that the pothole and the bump caused an obstruction to the normal flow of traffic on Exit 851. On cross-examination, Deputy Allday estimated the pothole to have been only about three inches deep. He testified that the road's condition was reasonably safe for a car if the driver slowed down in exiting and knew of the condition, but he agreed the first time he encountered the condition in his car when he did not know about the condition, it did not cause an accident or a crash.

Testimony of Ashley Short

Ashley Short testified that at the time of Camarillo's accident, she was an acquaintance of Camarillo's and was in a vehicle being driven by Camarillo's best friend, and they were traveling directly behind Camarillo. Short recalled that they were all going to the same place and were taking the same exit to get to that location. According to Short, the vehicle she was a passenger in was "a couple of car lengths behind[]" Camarillo as they were taking the exit. She testified that she did not believe Camarillo was braking but was "idl[ing] down[]" the exit in order to slow down. She recalled that she did not see anything in the road, but she believed Camarillo hit "the indent[]" in the road which caused him and the motorcycle to "fly up." Short testified that after seeing the accident and Camarillo's injuries, she immediately called 911.

At trial, Short described the "indent" as "[b]ig enough to mess up a tire." Short testified that she took that exit often and knew the indent was there, that she always

7

tried to slow down into the exit or avoid the indent because her vehicle was low to the ground, and the indent in the road had "never messed up" her vehicle. According to Short, shortly after Camarillo's accident, the indent had been "patched" but not fixed and that even with the condition patched, she still feels the joint when her vehicle passes over it.

Testimony of Gregory Brinkmeyer

Gregory Brinkmeyer, a professional engineer in Texas, testified he was retained in this case to provide an expert opinion on maintenance and repair of roadways in Texas as it relates to Camarillo's accident. Brinkmeyer testified that in preparation for his testimony and the drafting of his report, he reviewed Plaintiff's Exhibit 1 (the accident report), Plaintiff's Exhibit 2 (photographs of the accident scene), Plaintiff's Exhibit 16 (photographs of the accident scene), and Plaintiff's Exhibit 3 (Google Map photographs of the scene). In Brinkmeyer's expert opinion, TxDOT failed to meet the following requirements: maintain a reasonably safe roadway, inspect the roadway to anticipate continuous problems with the roadway, comply with TxDOT's maintenance guidelines, and warn of the condition to the traveling public. Brinkmeyer testified that the joint in the roadway was problematic because the area continued "to small out[,]" and TxDOT had opted for a temporary fix by packing asphalt in the joint instead of doing a "long-term fix." According to Brinkmeyer, the Google Map photographs from March of 2016 that were admitted

at trial show that the asphalt pavement on top is not adhering to the material underneath and the asphalt is flaking off and getting pushed, causing an unsmooth surface and cracking at the joint. Brinkmeyer testified that the Google Map photographs from January 2017 (admitted at trial) show that TxDOT had temporarily repaired the unlevel surface by adding "some type of cold mix asphalt[,]" and that the Google Map photographs from 2018 (admitted at trial) depict different more temporary repairs applied to the joint by TxDOT, and that the Google Map photographs in 2021 (admitted at trial) show that TxDOT added a "patch unit[]" to the joint. Brinkmeyer testified that the Google Map photographs in 2023 (admitted at trial) indicate that more pavement had "shoved up[]" and that the patch that had been applied had been pushed, causing the joint to open between the concrete and the asphalt. Brinkmeyer testified that TxDOT should have determined what was causing the movement and put something that would bond better to the pavement in order to create a "better ride surface over time[.]" Brinkmeyer testified that based upon his experience and training, he believed that at the time of the accident, the joint was an unreasonably dangerous condition, and that the photographs of the roadway's condition in 2023 show that after the accident the dangerous condition still had not been remediated. Brinkmeyer testified that Plaintiff's Exhibit 2 showed that the condition is not necessarily a pothole but is "a joint that has failure across the entire width of the lane[]" with a "bump" "[a]round 3 inches."

Testimony of Todd Dinger

Todd Dinger testified he was the maintenance supervisor for TxDOT's Beaumont district at the time of Camarillo's accident. According to Dinger, prior to January of 2020, he frequently drove over the bump, but it never damaged his vehicle or spilled his coffee because of the bump. He testified that he knew of the "knot" in the road in December of 2019, he did not know what kind of danger it could pose, the knot did not throw him off the roadway or cause him to hit his head on the roof of his vehicle, and he said he believed it to be a dangerous condition. Based on Plaintiff's Exhibit 2, photographs of the road condition shortly after Camarillo's accident and comparing the size of the pothole to the width of the painted roadway lines, Dinger believed that the pothole was less than two inches deep. According to Dinger, he took the same exit two or three weeks before Camarillo's accident and nothing came to his attention suggesting that the condition of the roadway would cause any kind of vehicle to have an accident. Dinger testified that the only difference in the condition of the roadway then and at the time of the accident was the pothole. According to Dinger, after Camarillo's accident, Dinger looked at the call-out logs and there had been no calls from DPS or Beaumont Police Department reporting an issue with the roadway condition.

10

The Jury Charge and the Final Judgment

After the presentation of evidence at trial and during the charge conference, counsel for TxDOT objected to Question 1 and Question 2 in Plaintiff's proposed charge and argued that, as for Plaintiff's premises defect claim, whether the condition at issue is an obstruction or special defect is to be determined as a matter of law, and TxDOT submitted its proposed jury charge with a question for the jury on the ordinary premises defect issue and not the special defect issue. The trial court rejected TxDOT's proposed jury charge, and the obstruction (Question 1) and special defect (Question 2) questions were included in the jury charge. The trial court did not include any definition of an "obstruction." After deliberating, the jury answered the charge as follows:

QUESTION 1

On January 7, 2020, did the condition of the roadway in question constitute an obstruction?

Answer "Yes" or "No":

Answer: <u>Yes</u>

QUESTION 2

If you answered "Yes" to Question 1, then answer the following question. Otherwise, skip Question 2 and move on to Question 3.

Did the negligence, if any, of the person(s) named below proximately cause the January 7, 2020 crash?

11

With respect to the condition of the road, TEXAS DEPARTMENT OF TRANSPORTATION was negligent if –

1. A condition of the road at the time and place of the crash posed an unreasonable risk of harm, and

2. TEXAS DEPARTMENT OF TRANSPORTATION knew, or reasonably should have known of the danger presented by the condition, and

3. TEXAS DEPARTMENT OF TRANSPORTATION failed to exercise ordinary care to protect OSCAR CAMARILLO from danger by both failing to warn OSCAR CAMARILLO of the condition and failing to make that condition reasonably safe.

"Negligence when used with respect to the conduct of OSCAR CAMARILLO, means failure to use ordinary care, that is, failing to do that which a person or [sic] ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

Answer "Yes" or "No" for each of the following:

1. TEXAS DEPARTMENT OF TRANSPORTATION <u>Yes</u>

2. OSCAR CAMARILLO <u>Yes</u>

QUESTION 3

Did the negligence, if any, of the person(s) named below proximately cause the January 7, 2020 crash?

With respect to the condition of the road, TEXAS DEPARTMENT OF TRANSPORTATION was negligent if —

1. A condition of the road at the time and place of the crash posed an unreasonable risk of harm, and

12

2. TEXAS DEPARTMENT OF TRANSPORTATION had actual knowledge of the danger presented by said condition; and

3. OSCAR CAMARILLO did not have actual knowledge of the danger presented by said condition, if any; and,

4. TEXAS DEPARTMENT OF TRANSPORTATION failed to exercise ordinary care to protect OSCAR CAMARILLO from danger by both failing to warn OSCAR CAMARILLO of the condition and failing to make that condition reasonably safe.

"Negligence" when used with respect to the conduct of OSCAR CAMARILLO, means failure to use ordinary care, that is, failing to do that which a person or [sic] ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

Answer "Yes" or "No" for each of the following:

1. TEXAS DEPARTMENT OF TRANSPORTATION      No

2. OSCAR CAMARILLO     Yes

QUESTION 4

If you answered "Yes" to Question 2 or "Yes["] to Question 3 for more than one of those named below, then answer the following question. Otherwise do not answer the following question.

Assign percentages of responsibility only to those you found caused or contributed to cause the January 7, 2020 crash. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found. The percentage attributable to any one need not be the same percentage attributed to that one in answering another question.

13

1. TEXAS DEPARTMENT OF TRANSPORTATION    <u>75</u>
2. OSCAR CAMARILLO    <u>25</u>

TOTAL 100%

QUESTION 5

Answer Question 5 if you answered "Yes" for TEXAS DEPARTMENT OF TRANSPORTATION to Question No. 2 or to Question No. 3 and answered:

1. "No" for OSCAR CAMARILLO to Question No. 2 or Question No. 3, or[]
2. 50 percent or less for OSCAR CAMARILLO to Question No. 4.

Otherwise, do not answer Question No. 5.

What sum of money, if paid now in cash, would fairly and reasonably compensate OSCAR CAMARILLO for his injuries, if any, that resulted from the occurrence on January 7, 2020 crash?

Consider the elements of damage listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find. Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such condition was aggravated by any injuries that resulted from the occurrence in question.

Answer separately, in dollars and cents, for damages, if any. Do not reduce the amounts, if any, in your answers because of the negligence, if any, of OSCAR CAMARILLO. Any recovery will be determined by the Court when it applies the law to your answers at the time of the judgment.

a. Medical care expenses OSCAR CAMARILLO incurred in the past.

14

Answer: <u>60,000</u>

b. Medical care expense OSCAR CAMARILLO will sustain in the future.
Answer: <u>10,000</u>

c. Physical pain OSCAR CAMARILLO sustained in the past.
Answer: <u>100,000</u>

d. Physical pain that, in reasonable probability, OSCAR CAMARILLO will sustain in the future.
Answer: <u>10,000</u>

e. Mental anguish OSCAR CAMARILLO sustained in the past.
Answer: <u>55,000</u>

f. Mental anguish that, in reasonable probability, OSCAR CAMARILLO will sustain in the future.
Answer: <u>10,000</u>

g. Physical impairment OSCAR CAMARILLO sustained in the past.
Answer: <u>15,000</u>

h. Physical impairment that, in reasonable probability, OSCAR CAMARILLO will sustain in the future.
Answer: <u>0</u>

i. Physical disfigurement OSCAR CAMARILLO sustained in the past.
Answer: <u>0</u>

j. Physical disfigurement that, in reasonable probability, OSCAR CAMARILLO will sustain in the future.
Answer: <u>0</u>

k. Loss of earning capacity OSCAR CAMARILLO sustained in the past.
Answer: <u>7,000</u>

TxDOT filed a Motion for Judgment Not Withstanding the Verdict and to Dismiss for Want of Jurisdiction, arguing, among other things, that the pothole and condition of the roadway was not a "special defect" because of its common size and because it was not unusual or unexpected. The trial court signed a Final Judgment incorporating the jury's verdict and stating that the trial court found as a matter of law that Camarillo's injuries were caused by a special defect in the roadway. In awarding damages, the trial court applied the 25% reduction to the money damages based on the jury's allocation of responsibility and then applied section 101.023 of the Texas Civil Practice and Remedies Code's limits of liability. Accordingly, the trial court awarded Camarillo $250,000 plus post-judgment interest. TxDOT timely appealed.

Issues on Appeal

In TxDOT's first issue, it argues that there is no evidence of how long the condition at issue existed prior to the accident, an essential element of Camarillo's claim. In issue two, TxDOT contends that the condition at issue was not a special defect, and the jury found TxDOT not negligent under an ordinary premises defect standard of care. In its third issue, TxDOT argues that neither the bump nor the pothole posed an unreasonable risk of harm as a matter of law.[4]

---

[4] As an aside, Camarillo argues in his brief that the special defect issue was not raised by TxDOT during the trial, but during the charge conference TxDOT objected to the jury charge questions on the special defect issue.

Analysis

"Whether a condition is a premise[s] defect or a special defect is a question of duty involving statutory interpretation and thus an issue of law for the court to decide." *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 238 (Tex. 1992). We first address TxDOT's second issue. In issue two, TxDOT argues that the condition at issue was not a special defect, and the jury found TxDOT not negligent under an ordinary premises defect standard of care. Specifically, TxDOT contends that the jury's finding in Question 1 of the jury charge that the condition is an obstruction is irrelevant because whether a condition is an ordinary premises defect or special defect is a question of duty as a matter of law, and the alleged defect here is not like an excavation or obstruction on a roadway as required by *Texas Department of Transportation v. York*, 284 S.W.3d 844, 847 (Tex. 2009). TxDOT also cites this court's opinion in *Texas Department of Transportation v. Lofton*, No. 09-22-00256-CV, 2023 Tex. App. LEXIS 7969, at **4-5 (Tex. App.—Beaumont Oct. 19, 2023, no pet.) (mem. op.), and other cases[5] in arguing that the pothole is not a special defect because of its common size and because it is not unusual or unexpected. TxDOT argues that, to the extent Camarillo argues that a special defect

---

[5] *City of Denton v. Paper*, 376 S.W.3d 762, 764-66 (Tex. 2012); *City of El Paso v. Bernal*, 986 S.W.2d 610, 611 (Tex. 1999); *City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex. 1997); *Cnty. of Harris v. Eaton*, 573 S.W.2d 177, 178-80 (Tex. 1978); *City of Dallas v. Reed*, 222 S.W.3d 903, 905 (Tex. App.—Dallas 2007), *reversed by City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008).

17

capable of impairing a motorcyclist's ability to travel along the road is a special defect notwithstanding whether the same condition poses a danger to a passenger vehicle, a special defect determination cannot be made based on the class of driver that encounters it.

Camarillo responds that the condition here is not just a pothole but is instead a "joint spann[ing] the width of this one-lane exit ramp, consisting of a drop-off, hole and bump." Camarillo argues in his brief that TxDOT did not ever ask the trial court, during pre-trial or at trial, to determine whether the condition constituted a special defect. According to Camarillo, the evidence at trial supported the jury's finding of a special defect when considered with the characteristics outlined in *City of Denton v. Paper* to determine whether a condition is like an excavation or obstruction. *See* 376 S.W.3d 762, 765 (Tex. 2012). Camarillo argues that the cases cited by TxDOT

> are easily distinguishable from ours as they involve (1) a condition of a lesser size, (2) instances where the plaintiff could have avoided the condition by changing lanes, as opposed to a one-lane exit ramp, (3) a pedestrian walking on a sidewalk, as opposed to a motorcycle exiting the highway, (4) actual knowledge issues and not constructive knowledge, and/or (5) non-jury findings.

"The State of Texas is protected from suits for damages by sovereign immunity, unless waived by statute." *York*, 284 S.W.3d at 846 (citations omitted). "Legislative consent to waive sovereign immunity by statute must be by 'clear and unambiguous language,' . . . and suit can then be brought 'only in the manner

18

indicated by that consent.'" *Id.* (quoting Tex. Gov't Code Ann. § 311.034; *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 (Tex. 2003)). "[W]hen construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity." *Wichita Falls State Hosp.*, 106 S.W.3d at 697.

The TTCA provides a limited waiver of immunity, allowing suits against governmental units under certain, narrowly defined circumstances. *Tex. Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). The TTCA provides that a governmental unit waives governmental immunity from liability for claims for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). The TTCA waives immunity from suit only as expressly provided in the TTCA. *Id.* § 101.025(a); *Miller*, 51 S.W.3d at 587. Stated another way, "the extent of Section 101.025's waiver of immunity from suit is determined by the Act's limits on liability," and the TTCA is "'a unique statutory scheme in which the two immunities are co-extensive.'" *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 285 (Tex. 2022) (quoting *Sampson v. Univ. of Tex.*, 500 S.W.3d 380, 384 (Tex. 2016) quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004)).

The TTCA provides for a limited waiver of immunity for two categories of claims that allege dangerous conditions on real property – premises defects and

special defects. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022. If a claim involves a premises defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property. *Id.* § 101.022(a); *see Payne*, 838 S.W.2d at 237. Likewise, if the claim arises from a premises defect on a "toll highway, road or street, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property." Tex. Civ. Prac. & Rem. Code Ann. § 101.022(c). Under a licensee standard, among other elements, a plaintiff must prove that the governmental unit had actual knowledge of a condition that created an unreasonable risk of harm and that the licensee did not have actual knowledge of that same condition. *York*, 284 S.W.3d at 847; *Payne*, 838 S.W.2d at 237.

If the condition is a special defect, the governmental unit owes the duty that a private person owes to an invitee. Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b); *Payne*, 838 S.W.2d at 237. Under the invitee standard, a plaintiff need only prove that the governmental unit should have known of a condition that created an unreasonable risk of harm. *York*, 284 S.W.3d at 847; *Payne*, 838 S.W.2d at 237. To discharge its duty to keep its premises safe for invitees, the governmental unit must either adequately warn of the dangerous condition or make the condition reasonably safe. *See TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009).

20

The existence of a special defect is a question of law, which we review de novo. *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008). As explained by the Supreme Court, we traditionally distinguish special defects by some unusual quality outside the ordinary course of events. *Id.* We find this Court's recent memorandum opinion in *Texas Department of Texas v. Lofton* instructive. *See* 2023 Tex. App. LEXIS 7969. Although *Lofton* involved an interlocutory appeal of the trial court's denial of TxDOT's plea to the jurisdiction, this Court explained its rationale in determining that the pothole in that case was not a special defect, that section 101.022(b) of the TTCA did not apply, and that TxDOT did not owe a heightened duty as would apply to an invitee:

> Whether a condition is a premises defect or a special defect is a question of law that we review de novo. *York*, 284 S.W.3d at 847 (citation omitted). The Civil Practice and Remedies Code does not define "special defect," but gives guidance by likening special defects to "excavations or obstructions[.]" Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b); *York*, 284 S.W.3d at 847. Thus, the question is whether the condition is of the same kind or class as an excavation or obstruction. *Id.* (citations omitted); *Denton Cnty. v. Beynon*, 283 S.W.3d 329, 331 n.11 (Tex. 2009). "A special defect, then, cannot be a condition that falls outside of this class." *York*, 284 S.W.3d at 847 (citations omitted). In determining whether a particular condition is like an excavation or obstruction and therefore a special defect, the Texas Supreme Court has recognized several helpful characteristics, such as: "(1) the size of the condition; (2) whether the condition unexpectedly and physically impairs an ordinary user's ability to travel on the road; (3) whether the condition presents some unusual quality apart from the ordinary course of events; and (4) whether the condition presents an unexpected and unusual danger." [] *Paper*, 376 S.W.3d [at] 762 [] (citation omitted).

21

In *City of Denton*, the Supreme Court discussed the court of appeals' reasoning that the sunken area in the roadway was not the same as an ordinary pothole which would not be a special defect, because the sunken area had been caused by the City cutting a hole in the street. In other words, the court of appeals reasoning suggested a pothole by itself might not be a special defect, but the same pothole would be a special defect if it was caused by the governmental unit's ineffective repair. *Paper*, 376 S.W.3d at 765. The Supreme Court rejected the reasoning of the court of appeals and stated:

> A condition's quality as a special defect thus bears not so much upon the government's role in its creation as it does on the nature of the condition itself. The circumstances surrounding the governmental unit's involvement in the creation of a premises defect may be relevant to the issue of the government's knowledge of the defect, but will not serve to transform an otherwise ordinary premises defect into a special one.

*Id.* "The class of special defects contemplated by the statute is narrow." *The Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010). "It does not include common potholes or similar depressions in the roadway." *Paper*, 376 S.W.3d at 766; *Hindman v. State Dep't of Highways & Pub. Transp.*, 906 S.W.2d 43, 46 (Tex. App.—Tyler 1995, writ denied) (observing that special defects do not include "every pothole or bump encountered on a public highway in Texas capable of upsetting a cyclist"). "Rough, uneven asphalt and even potholes are not unexpected and should be within the realm of objective expectations of the ordinary user." *Tex. Dep't of Transp. v. Pierce*, No. 12-19-00260-CV, 2020 Tex. App. LEXIS 892, [at *11] (Tex. App.—Tyler Jan. 31, 2020, pet. denied) (mem. op.); *see Hayes*, 327 S.W.3d at 116. Typically, such irregularities will not present an unusual danger to the traveler. *Paper*, 376 S.W.3d at 766.

. . . .

. . . Here, the evidence shows the pothole measured approximately six inches in width and three and a half inches in depth. Ordinary drivers in the normal course of driving roadways should expect that normal wear and tear may cause depressions and potholes like the pothole the evidence describes in relation to its size and depth, and we cannot say this pothole was of an "unusual quality outside the ordinary course of events" such as would cause it to be included within the same kind or class of excavations or obstructions that qualify as

special defects. *Id.*; *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b). This pothole does not fit within the same class of hazard of an excavation or obstruction as referenced in the TTCA. *Compare Paper*, 376 S.W.3d at 765-66 (holding sunken area on the street that was two inches to a few inches more at its deepest point and located in the center of one lane of traffic was not a special defect), and *Reed*, 258 S.W.3d at 622 (holding that a two-to[-]three inch difference in elevation between traffic lanes was not a special defect), and *City of El Paso v. Bernal*, 986 S.W.2d 610, 611 (Tex. 1999) (holding that a worn or depressed area of a sidewalk approximately three feet by six feet in size with a depth of three inches was not a special defect), with *Cnty. of Harris v. Eaton*, 573 S.W.2d 177, 178-79 (Tex. 1978) (oval-shaped hole six to ten inches deep, and four to nine feet wide, extending across ninety percent of roadway is a special defect), and *City of Weston v. Gaudette*, 287 S.W.3d 832, 838-39 (Tex. App.—Dallas 2009, no pet.) (pothole ten feet in diameter and five to six inches deep, extending the width of one traffic lane is a special defect), and *Morse v. State*, 905 S.W.2d 470, 475-76 (Tex. App.—Beaumont 1995, writ denied) (ten to twelve inch drop off on shoulder of road is a special defect), *and State v. Nichols*, 609 S.W.2d 571, 573 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (caved-in portion of highway three to five feet wide and three to four feet deep, extending across entire highway is a special defect).

*Id.* at **9-15.

Having reviewed the trial testimony, photographs, and other exhibits in the present case, we conclude that the condition of the roadway at issue is not of the same class as an excavation or obstruction, and it is not a special defect. As noted in *Lofton*, the special defect class is narrow. *See id.* at *11 (quoting *Hayes*, 327 S.W.3d at 116). The defect must "pose a threat to 'ordinary users' in the manner that an excavation or obstruction blocking the road does." *Beynon*, 283 S.W.3d at 332. Although some of the witnesses here gave opinions regarding whether they believed

23

the condition was dangerous, or an obstruction, or unexpected, we note that the determination of whether a particular road condition is unexpected or unusual and, thus, a special defect "turns on the objective expectations of an 'ordinary user' who follows the 'normal course of travel.'" *See Hayes*, 327 S.W.3d at 116 (quoting *Beynon*, 283 S.W.3d at 332); *see also generally Hanna v. Impact Recovery Sys., Inc.*, 295 S.W.3d 380, 393 (Tex. App.—Beaumont 2009, pet. denied) (witness's use of the word "obstruction" to define the condition was insufficient to establish the condition was a special defect); *Howard v. City of Dallas*, No. 05-94-01377-CV, 1995 Tex. App. LEXIS 3407, at **13-14, **19-20 (Tex. App.—Dallas Sept. 20, 1995, no writ) (mem. op.) (in summary judgment case, traffic engineer's opinion that the culvert was a special defect did not create a fact issue). Ultimately, the unexpectedness or unusualness of a defect is not a relevant fact if the defect is not of the same class as an excavation or obstruction as contemplated by the statute. *See York*, 284 S.W.3d at 847 ("[T]he central inquiry is whether the condition is of the same kind or falls within the same class as an excavation or obstruction.") (citing *Eaton*, 573 S.W.2d at 179); *Beynon*, 283 S.W.3d at 332 ("[T]he TTCA does not posit an alternative basis for special-defect liability when a condition, while not an excavation or obstruction, is out of the ordinary.").

Camarillo testified that Plaintiff's Exhibit 2 depicted the "joint" that his motorcycle hit prior to flipping him but that he did not see what he hit. Despite

24

Deputy Allday's accident report, admitted as Plaintiff's Exhibit 1, noting that Camarillo's motorcycle "struck a large pot hole in the lane of travel[]" and he was thrown from the motorcycle, Camarillo argues on appeal that the condition at issue is not just the pothole, but it is also the joint extending across the lane of the exit and a bump on the other side of the lane from the pothole. The photographs of the roadway condition, depicting a joint across the lane of the exit with an area with the asphalt built up on one side and the area with the pothole on the other side, themselves do not reveal a special defect. *See generally Paper*, 376 S.W.3d at 765 (photographs of condition indicated not a special defect); *City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex. 1997) (photographs sufficiently demonstrated that sidewalk's condition was not a special defect); *Pierce*, 2020 Tex. App. LEXIS 892, at *11 ("The photographs indicate the irregular surface does not compare with the road conditions that have been found to be in the same class as excavations."). The photographs here show a joint with a small increase in elevation from asphalt on one side of the lane and a shallow pothole on the other side of the lane.

Furthermore, the testimony regarding the size of the condition, whether the condition unexpectedly and physically impairs an ordinary user's ability to travel on the road, whether the condition presents some unusual quality apart from the ordinary course of events, and whether the condition presents an unexpected and unusual danger, also fail to establish that the condition was a special defect. *See*

25

*Paper*, 376 S.W.3d at 765. According to Camarillo, he did not see the condition in the roadway that he struck. He agreed that photographs show a joint in the roadway between the asphalt and the concrete that covers the entire lane of travel and repairs to the roadway on one side as well as a "little hole" in the joint, and that he struck the joint but he did not know which side of the lane he struck. On cross-examination, Camarillo agreed that when he had passed over the same "bump" in the roadway in his patrol vehicle it did not cause a wreck. According to Camarillo, he encountered the same bump on his way into town for the trial, and he testified that the bump is "doable in a car." Short, who was following Camarillo in another vehicle, recalled that she did not see anything in the road, but she believed he hit "the indent[]" in the road which caused him and the motorcycle to "fly up." At trial, she described the indent as "[b]ig enough to mess up a tire." Deputy Allday testified that he took the exit often and recalled that "there's always been a bump there[] since [he has] worked as a state trooper or in the sheriff's office." Deputy Allday testified that the pothole was "anywhere from 2 to 3 feet wide as far as crossing the road[] . . . and then several inches deep[,]" and that he remembered "stepping in or around it and it coming up like around [his] ankle or above it." He later estimated the pothole to have been about two to three inches deep. He admitted that the first time he encountered the condition in his car he did not know about the condition, and it did not cause a crash. Brinkmeyer testified that Plaintiff's Exhibit 2 showed that the condition is not

26

necessarily a pothole but is "a joint that has failure across the entire width of the lane[]" with a "bump" "[a]round 3 inches." Dinger testified that he believed that the pothole was less than two inches deep. According to Dinger, he had looked at the call-out logs and there had been no calls from DPS or Beaumont PD calling in an issue with the roadway condition. All the witnesses noted that each had taken the exit before, some witnesses had even taken it frequently, without incident.

There was testimony that the pothole was two-to-three feet wide, and anywhere from one-and-a half to three inches deep. Such potholes are ordinary and do not constitute a special defect. *See Lofton*, 2023 Tex. App. LEXIS 7969, at **9-15; *see also Paper*, 376 S.W.3d at 765-66 (sunken area on the street that was two inches to a few inches more at its deepest point and located in the center of one lane of traffic was not a special defect); *Bernal*, 986 S.W.2d at 611 (a worn or depressed area of a sidewalk approximately three feet by six feet in size with a depth of three inches was not a special defect). No testimony was provided about the depth or width of the joint, but the photographs depict a narrow joint that is commonplace on roadways and do not amount to a special defect. *Cf. Tex. Dep't of Transp. v. Sonefeld*, No. 07-22-00307-CV, 2023 Tex. App. LEXIS 9557, at *2, **12-13 (Tex. App.—Amarillo Dec. 21, 2023, pet. denied) (mem. op.) (separation between two lanes of travel that was six to seven inches wide, two to four inches deep, and extended for 100 to 200 feet was a special defect). No testimony was provided about

27

the height or width of the "bump" or "knot" on the other side of the lane, which appears in the photographs to be a minimal increase in elevation. Generally, road bumps and rises in the pavement have not been considered special defects. *See Reed*, 258 S.W.3d at 622 (two-to-three inch difference in elevation between traffic lanes was not a special defect); *see also Pierce*, 2020 Tex. App. LEXIS 892, at *10 ("Variations in public roadways of a few inches are not the same as the excavations or obstructions mentioned in the TTCA."); *Hindman*, 906 S.W.2d at 45-46 (two and a half inch tall bump in the shoulder of the highway, one foot wide and two foot long did not constitute a special defect); *Dippel v. Refugio Cnty. Mem'l Hosp. Dist.*, No. 13-01-211-CV, 2002 Tex. App. LEXIS 818, at **11-13 (Tex. App.—Corpus Christi Jan. 31, 2002, no pet.) (mem. op., not designated for publication) (bump in the pavement is not an unexpected or unusual condition; the mound in question was only ten to twelve inches long and two to six inches tall and therefore was a "relatively small and minor defect[]").

Even considering the pothole, joint, and bump *together* as the "condition," we conclude this condition is one that ordinary drivers in the normal course of driving roadways should expect and we cannot say that such condition should be included within the same kind of class as an excavation or obstruction that qualifies as a special defect. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b); *York*, 284 S.W.3d at 847; *Lofton*, 2023 Tex. App. LEXIS 7969, at **9-15. The condition in

28

this case does not fit within the same class of hazard of an excavation or obstruction as referenced in the TTCA. Accordingly, the condition in this case was not, as a matter of law, a special defect as described by the TTCA and as contemplated by the case law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022; *York*, 284 S.W.3d at 847; *Lofton*, 2023 Tex. App. LEXIS 7969, at **9-15. TxDOT's immunity was not waived on this basis. We sustain TxDOT's second issue.[6] Because issue two is dispositive, we need not address TxDOT's first and third issues. *See* Tex. R. App. P. 47.1.

We reverse the trial court's judgment and render a take-nothing judgment against Camarillo.

REVERSED AND RENDERED.

LEANNE JOHNSON
Justice

Submitted on May 1, 2025
Opinion Delivered March 19, 2026

Before Golemon, C.J., Johnson and Wright, JJ.

---

[6] In answering Question 3 of the jury charge, the jury rejected Camarillo's claim that TxDOT was liable for an ordinary premises defect, and Camarillo did not file a cross-appeal on that issue.